626 So.2d 106 (1993)
Shirl E. HARTLE
v.
PACKARD ELECTRIC, A DIVISION OF GENERAL MOTORS CORPORATION, Ted Flowerday and Ivon Pickens.
No. 90-CA-1233.
Supreme Court of Mississippi.
October 21, 1993.
Dixon L. Pyles, Pyles & Tucker, Jackson, for appellant.
Paul O. Miller, III, W. Thomas Siler, Jr., Phelps Dunbar, Jackson, for appellee.
Before DAN M. LEE, P.J., and PITTMAN and JAMES L. ROBERTS, Jr., JJ.
PITTMAN, Justice, for the court:
On June 9, 1987, Hartle filed a complaint alleging civil conspiracy, unjustifiable interference with contractual relationships and prospective economic advantages, and breach of contract. Hartle named Packard Electric, Ted Flowerday and Ivon Pickens as defendants. *107 The defendants removed the case to the United States District Court for the Southern District of Mississippi, and filed a motion for summary judgment. The district court granted the defendants' motion, but the Fifth Circuit reversed the judgment based on the fact that the district court did not have subject matter jurisdiction to accept removal of the case. Hartle v. Packard Electric, 877 F.2d 354 (5th Cir.1989). The Fifth Circuit remanded the case to the Hinds County Circuit Court.
The defendants filed another motion for summary judgment, and the Hinds County Circuit Court granted the motion based on the same reasons given by the district court. Feeling aggrieved, Hartle filed this appeal. Finding no reversible error, this Court affirms.

I.
Packard employed Hartle on June 6, 1973, as an electrician at its plant in Clinton, Mississippi. In October of 1976, he was promoted to a salaried position as a maintenance supervisor. As a result of the promotion, he received a pay raise and executed an employment agreement in May of 1977. The employment agreement stated that Hartle's employment was to be on a month-to-month basis and it contained the following language:
The Employer and Employe acknowledge that there are no other arrangements, agreements, or understandings, verbal or in writing, regarding same and that any modification or amendment hereof, other than a cancellation and replacement hereof by another written form of agreement, must be endorsed hereon in writing and initialed by both the Employe and Employer.[1]
Hartle participated in several employee benefit plans and programs, including a savings-sharing plan, a personal retirement income plan, a health care plan, and a disability plan. Hartle also received an employee handbook which stated that "the policies and procedures in the booklet do not constitute a legal contract, and do not modify the month-to-month employment relationship (which in fact may not be altered, amended or extended by any employe, representative or agent or GM)... ."
In March of 1986, Ted Flowerday became Packard's General Supervisor of Engineering and Maintenance and Ivon Pickens became Plant Engineer. Prior to March 1986, Ivon Pickens was the General Supervisor of Engineering and Maintenance. Hartle's wife, Doris, stated in her affidavit that she met Flowerday and Theodore Williams, another Packard employee, in front of the plant entrance in May of 1986. According to Doris, Flowerday told her that they "were going to get Bud." "Bud" was the name by which Hartle was known by his co-workers at the plant.
In June of 1986, Flowerday decided to reorganize his staff. He informed Hartle that he would be needed to replace Paul Lee, who was being transferred to engineering, as a maintenance supervisor on the midnight shift. At the time, Hartle was maintenance supervisor for the day shift. According to Flowerday, he was of the opinion that Gary Pickens was more qualified to handle the day shift given his organizational skills and background in electronics. In his deposition, Flowerday stated that Hartle used foul language and told him that he was not going to do anything on the midnight shift. He also told Flowerday that he was going on vacation and would probably go on sick leave after he had used up all of his vacation days. Hartle also threatened to quit.
Hartle denied that he was insubordinate and that he used foul language. He admitted, however, that he was upset about being placed on the midnight shift. According to Hartle, Flowerday falsely accused him of drinking intoxicants on the job and hiding bottles of liquor in and about the workplace.
Hartle went on vacation on July 31, 1986. At the time, Hartle only had 4.5 days of vacation built up. Al Beck, superintendent at Packard, telephoned Hartle and told him that he needed to take more than 4.5 days of *108 vacation. At the end of his vacation, Hartle checked into Brookwood, an alcohol and drug recovery center. According to Terry Lee, the personnel director, Hartle checked out of the rehabilitation center against the advice of his physician on August 22, 1986. Hartle, however, claims that a nurse told him he was not dependent on alcohol or drugs, so he left the center and returned home.
Flowerday informed Hartle that he should report to personnel on Monday, August 25, 1986. Terry Lee told Hartle that he had been instructed to suspend Hartle without pay for one week because of derogatory statements made to Flowerday. On Friday, August 29, 1986, Shirley Self, personnel supervisor, instructed Hartle to report to the personnel office on September 2, 1986. On that date, Terry Lee informed Hartle that he was terminated. Three reasons were given for his termination: insubordination, refusal to perform assigned work, and refusal to complete alcohol abuse treatment. Hartle denies that he was ever given any reason for his termination until he heard Flowerday testify at his deposition.
On appeal, Hartle assigned the following errors:
I. HARTLE'S PARTICIPATION IN GMC'S INVESTMENT PLANS CHANGED THE PUTATIVE "AT-WILL" EMPLOYMENT STATUS TO ONE WHICH CONFERRED TENURE.
II. THE HANDBOOKS OF PACKARD/GMC CREATED AN EXPRESS CONTRACT FOR HARTLE TO MAKE A LEGITIMATE CLAIM FOR EMPLOYMENT TO JULY 31, 2002.
III. HINDS CIRCUIT COURT ERRED IN FAILING TO HOLD PACKARD'S EMPLOYMENT CONTRACT WITH HARTLE IMPOSED DUTY TO TERMINATE IN GOOD FAITH UNDER MISSISSIPPI LAW.
IV. PACKARD WRONGFULLY TERMINATED HARTLE'S FULL RETIREMENT AND OTHER BENEFITS.
V. THE HINDS CIRCUIT COURT ERRED IN RULING HARTLE MAY NOT PROSECUTE HIS CLAIM FOR CIVIL CONSPIRACY AGAINST ALL DEFENDANTS.
VI. THE HINDS CIRCUIT COURT ERRED IN RULING HARTLE HAD NO RIGHT TO PROSECUTE HIS CLAIM AGAINST ALL DEFENDANTS FOR THE TORTS OF INTENTIONAL INTERFERENCE WITH THE EXISTING EMPLOYMENT CONTRACTS AND PROSPECTIVE BUSINESS ADVANTAGE.
VII. THE HINDS CIRCUIT COURT ERRED IN GRANTING SUMMARY JUDGMENT.

II.
Hartle contends that he made investments in Packard's business and that this is sufficient to show an intent of the parties to remove the contract from the putative "termination at will" status. He claims that his employment contract was supported by independent consideration other than the obligation to supervise the maintenance personnel on a particular shift and to receive a salary for such service. Hartle claims that, in effect, he purchased his employment for a fixed term to July 31, 2002. The additional consideration includes his investment in several employee benefit plans and his foregoing of other job offers.
In support of his claim, Hartle cites Rape v. Mobile & O.R. Co., 136 Miss. 38, 100 So. 585 (1924):
It may be said to be the established rule that want of mutuality of obligation will not render a contract of employment unenforceable if it is supported by an independent consideration, that is, a consideration other than the obligation of service to be performed on the one hand and wages to be paid on the other; but we think the correct rule ... is that a contract for permanent employment which is not supported by such independent consideration is terminable at the pleasure of either party.
Rape, 100 So. at 588.
Hartle also cites Pierce v. Tennessee Coal, Iron & R. Co., 173 U.S. 1, 19 S.Ct. 335, 43 *109 L.Ed. 591 (1899). In Pierce, a railroad company promised to pay an injured employee certain wages and benefits in settlement of his claim. In consideration of these promises, the employee agreed to do for the company such work as he was able to do and to release the company from all liability for damages. The United States Supreme Court held that the employment relationship was not terminable at will. Pierce, 173 U.S. at 9-10, 19 S.Ct. at 338-39, 43 L.Ed. at 595. Hartle's case, however, is distinguishable from Pierce.
Packard contends that Hartle's participation in the employee benefit plans was voluntary and not required as consideration for a promise to terminate Hartle only for cause. Thus, his participation did not constitute independent consideration sufficient to alter the at will status of his employment. Although Packard concedes that in Mississippi an at will employment relationship can be modified so that an employee can only be terminated for cause if the employee gives independent consideration, in exchange for the employee's promise of "permanent" employment, Rape; Windfield v. Groen Division, Dover Corp., 740 F. Supp. 1230 (S.D.Miss. 1990), the employee bears the burden of proving that independent additional consideration was given. Windfield, 740 F. Supp. at 1233.
In Rape, this Court held that the employee failed to prove that he provided independent additional consideration for a promise of "permanent" employment by continuing to work in the service of the employer, by expending funds to move his family closer to the new workplace, and by working in a union organizing campaign. In Windfield, the district court held that an employee did not provide independent additional consideration by not seeking another job. Finally, in Samples v. Hall of Mississippi, Inc., 673 F. Supp. 1413 (N.D.Miss. 1987), the district court held that an employee does not provide independent, additional consideration by serving in union organizing campaigns, working as volunteer chief of the company's fire brigade or volunteering to serve on the company's newsletter.
Hartle's voluntary participation in the employee benefit plans does not constitute independent, additional consideration sufficient to alter the employment contract to one other than terminable at will. This assignment of error is without merit.

III.
Hartle contends that the handbooks distributed by Packard/GMC create a claim to continued employment until July 31, 2002. The handbooks set forth the conditions of employment, policies, practices, responsibilities, rules of conduct and benefits for employees. The Packard/GMC handbook states that "the interrelated objectives are to enhance continuous employment opportunities and provide substantial benefits and income protection to salaried employees." Although the salaried personnel are assured that the provisions of the handbook will lead to a good, long-term relationship, it also warns that the policies and procedures contained therein do not constitute a legal contract.
In Perry v. Sears, Roebuck & Co., 508 So.2d 1086 (Miss. 1987), this Court held that an employee handbook cannot be considered a contract between the employer and the employee where the handbook explicitly states that the employee can be terminated at will. The last paragraph of the Packard/GMC handbook provides that "the policies and procedures in [this] booklet do not constitute a legal contract, and do not modify the month-to-month employment relationship (which in fact may not be altered, amended or extended by any employe, representative or agent of GM)... ." The provision maintains the month-to-month employment status and preserves Packard's right to terminate Hartle at will.
Hartle also maintains that the handbook's listing of reasons for discharge limited Packard's discretion to discharge him except for just cause. The handbook provides the following with respect to discharges:
A discharge is the separation of an employe prior to age 60 for personal conduct in the course of his or her duties such that the employe's continued employment would not be in the best interests of the Corporation.

*110 Reasons for discharge may include dishonesty, willfull [sic] violation of instructions or Corporate Policy, insubordination, or refusal to comply with governmental requirements related to employment. In addition, conduct reflecting badly on the Corporation, even if it occurs away from the job, may be viewed as grounds for discharge.
Your GM Benefits, A Handbook for Salaried Employes in the United States
The same argument was made in Reid v. Sears, Roebuck & Co., 790 F.2d 453 (6th Cir.1986). In Reid, the Sixth Circuit held:
We do not believe the listing of causes that "may result in the termination of your employment" in the Sears handbook detracted in any way from the language in the application or provided a reasonable basis for the conclusion that the plaintiff was employed under a "for cause" contract. The fact that certain acts were identified as conduct that might lead to discharge did not indicate that those acts were the exclusive permissible grounds for discharge.
Id. at 460.
Furthermore, the handbook provides that an employee can be discharged "prior to age 60 for personal conduct in the course of his or her duties such that the employe's continued employment would not be in the best interests of the Corporation." Thus, the handbook did not alter the at will status of the employment relationship. This assignment of error is without merit.

IV.
According to Hartle, Miss. Code Ann. § 75-1-203 (1972) imposes a "good faith" obligation on an employer when enforcing an employment contract. Section 75-1-203 provides that "[e]very contract or duty within this code imposes an obligation of good faith in its performance or enforcement." Thus, Hartle contends that an employer can only terminate a worker's services on the basis of "good faith."
Section 75-1-203, however, is a provision of Mississippi's version of the Uniform Commercial Code which does not apply to employment contracts. Furthermore, in Perry, this Court said that at-will employment relationships are not governed by an implied covenant of good faith and fair dealing:
Wrongful discharge actions, not founded on some theory of contract essentially sound in tort, although some of the theories have attributes associated with both contract and tort. Of these hybrids, the most prominent, (though as yet a small minority view), is the theory of the implied covenant of good faith and fair dealing. Any breach of this implied covenant by malicious termination or harassment is said to give the victim a tort action for wrongful discharge... . Only a few states have adopted this theory... .
Even if Mississippi were to adopt such a rule, however, Perry would probably not prevail under it. California and Montana both hold that where the employee has signed an explicit agreement that he can be terminated at will, and [sic] action under the implied covenant for good faith and fair dealing is precluded.
Perry, 508 So.2d at 1089 (citations omitted).
This assignment of error is without merit.

V.
The remaining issues raised by Hartle on appeal are devoid of merit and do not warrant discussion. Therefore, the lower court's decision is affirmed on these issues.
AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
McRAE, J., dissents with separate written opinion.
BANKS, J., not participating.
McRAE, Justice, dissenting:
Shirl E. Hartle was terminated from his job at Packard Electric because of alleged insubordination, refusal to perform work assigned to him and refusal to complete alcohol abuse treatment. He brought suit against his former employer and two co-workers. In affirming the summary judgment entered *111 against him, the majority simply finds that Hartle worked under an employment-at-will contract and thus disposes of his intentional tort claims without further ado. Since there remain numerous disputed issues of material fact for a jury to determine, summary judgment was not appropriate in this case. Clearly, the circuit court erred in granting the motion for summary judgment. Accordingly, I dissent.
It is disputed whether Hartle was an employee-at-will or whether his contract was for a specified term. In Atlanta Stoveworks v. Hamilton, 83 Miss. 704, 35 So. 763 (1904), we held that an employee working under a one-year contract could be discharged only in "good faith, not caprice." Id. 35 So. at 764. Even if it were determined that Hartle was employed at will, there remains the question of whether Packard followed its own corporate policies in discharging him. The record indicates that an employee could be terminated only for justifiable cause. As Packard's Personnel Director testified:
Q. Is it your contention that you can discharge a person at will for no cause whatsoever?
A. No, that's not my contention.
Q. What is your contention? That you can only discharge a person for a justifiable cause?
A. I think that, yes.
Q. That's the policy?
A. Yes.
Whether the allegations made against Hartle were true, however, and thus were justifiable cause for termination, is a disputed question which should have been resolved by a jury.
Hartle charged that the appellees had engaged in a civil conspiracy against him and further, that they had acted intentionally to interfere with his existing employment contract and prospective business advantages. These are torts which, at times, cannot be explicitly proven. Hartle's wife testified that Flowerday had told her they, "were going to get Bud"  the appellant. This is disputed, as is the issue of intent. Once it is apparent that facts are in dispute, the trial court must stop, go no further and let a jury resolve the questions. Only a jury can decide questions of fact  not the court on a plenary setting. The parties' respective states of mind are historical facts which can be established only by inference. These are issues of fact for a jury to determine, even when the underlying facts are not in dispute. Issues of intent are particularly inappropriate for summary disposition. See Staren v. American National Bank and Trust Co. of Chicago, 529 F.2d 1257 (7th Cir.1976); Conrad v. Delta Air Lines, 494 F.2d 914 (7th Cir.1974).
Disputed questions of fact should be determined by a jury. Therefore, I would find that the circuit court erred in granting the appellees' motion for summary judgment. Accordingly, I dissent.
NOTES
[1] The employment agreement and the handbook use an alternative and acceptable spelling of "employe." Webster's Third New World Dictionary 743 (1971). This Court, however, in the text of the opinion uses the more common spelling "employee."