755 So.2d 1141 (1999)
Mark McCRORY and David Thompson, Appellants,
v.
WAL MART STORES, INC., Appellee.
No. 98-CA-00652-COA.
Court of Appeals of Mississippi.
May 18, 1999.
Rehearing Denied September 21, 1999.
Certiorari Denied November 18, 1999.
Jim Waide, Martin D. Crump, Hamilton, Mary Terrell Monroe Vardaman, Brandon, Attorneys for Appellants.
William O. Luckett, Jr., Clarksdale, Attorney for Appellee.
BEFORE McMILLIN, C.J., DIAZ, AND PAYNE, JJ.
McMILLIN, C.J., for the Court:
¶ 1. The case before the Court today requires us to consider, in a slightly different context, the impact of the Mississippi Supreme Court's decision in Bobbitt v. Orchard, Ltd. on an employee's right to contest his termination from employment. Bobbitt v. Orchard, Ltd., 603 So.2d 356 (Miss.1992). As in Bobbitt, the issue before us involves a perceived conflict between the terms of an employees' handbook issued by the employer and Mississippi's long-standing doctrine of employment at will. The trial court granted summary judgment in favor of Wal-Mart and the affected former employees, Mark McCrory and David Thompson, have appealed. We affirm the judgment of the trial court.

*1142 I.

Facts
¶ 2. Mark McCrory and David Thompson were terminated from employment at Wal-Mart. Though the facts are somewhat sketchy as to the basis for termination, it appears that the decision to discharge these employees arose out of an incident involving their treatment of customers that they suspected were potential shoplifters.
¶ 3. Both employees filed suit for wrongful termination and the cases were consolidated for trial. Neither employee had a contract of employment. However, both rely upon certain provisions contained in Wal-Mart's employees' handbook that is distributed to every new employee. More particularly, these employees claim that the portion of the handbook entitled Coaching for Improvement (copied in full as Appendix A to this opinion) created a progressive disciplinary system that Wal-Mart was obligated to follow in dealing with employee misconduct and that Wal-Mart ignored the system when it summarily terminated them.
¶ 4. Wal-Mart, in its summary judgment motion, advanced several arguments. First, it suggested that the terms of the handbook regarding employees' conduct on the job did not create the same sort of progressive disciplinary system found in Bobbitt v. Orchard and, thus, these employees had no right to insist that their alleged offenses be treated less drastically than termination. Secondly, Wal-Mart points out that the handbook contained a disclaimer required to be signed by all new employees stating that the handbook "is intended solely as a general information guide to let associates know about the current policies and programs Wal-Mart has in place. The policies and benefits presented in this handbook are for your information and do not constitute terms and conditions of employment. This handbook is not a contract."

II.

Discussion
¶ 5. This case brings into focus the evident tension that exists between the common law doctrine known as "employment at will" and the apparent institutional view of the Mississippi Supreme Court that, in application, the doctrine of employment at will creates harsh results for terminated employees. See e.g., Perry v. Sears, Roebuck & Co. 508 So.2d 1086, 1087 (Miss. 1987); Kelly v. Mississippi Valley Gas Co., 397 So.2d 874, 875 (Miss.1981).
¶ 6. The employment at will doctrine is, in itself, simple to state. In the absence of a formal contract of employment containing a fixed term of employment or creating some contractual expectation of tenure during satisfactory performance, an employee works at the will of his employer and the contract of employment may be terminated at any time by either the employer or the employee without the need for explanation. In an attempt to emphasize the extent of the employer's ability to end an employment relationship with an at will employee, the courts have said (perhaps unfortunately) that an employee may be terminated for "a good reason, a wrong reason, or no reason." Kelly, 397 So.2d at 875. The unfortunate aspect of this pronouncement is that, in a world that operates on cause and effect, it seems impossible for an employee to be terminated for "no reason." Nevertheless, the phrase may be useful in its ability to convey, with something of a literary flair, the broad freedom of the employer to end an employer-employee relationship at any time. Perhaps the best interpretation of the phrase "no reason" is that an employer terminating an at-will employee, though he certainly has some reason for doing so, may not be compelled to offer an explanation for the decision even if one be demanded. Though that proposition may seem harsh at first glance, it must be remembered that the at will employee enjoys the corresponding right to cease his *1143 labor on a moment's notice once a better situation appears without any fear of legal consequence no matter what the adverse impact that action might have on the employer.
¶ 7. The Mississippi Supreme Court, though openly critical of the doctrine of at will employment, has been reluctant to end the concept. Instead, in certain instances, it has engrafted exceptions onto the doctrine to cover special situations. Thus, in the case of McArn v. Allied Bruce-Terminix Company, the court held that an at will employee who is terminated for refusing to obey a directive to do an illegal act, or who is terminated for exposing illegal activity at the workplace, may, on grounds of public policy, bring a wrongful termination action as a sort of private reward system for resisting unlawful activity that might otherwise go undiscovered. McArn v. Allied Bruce-Terminix Co., 626 So.2d 603, 607 (Miss.1993).
¶ 8. Besides the public policy considerations of McArn, the Mississippi Supreme Court has recognized one other means of taking an employment relationship out of the employment at will status. This exception is the one that finds application in the Bobbitt decision. In Bobbitt, the supreme court said that an employer, by promulgating an employees' handbook, may create contractual obligations on its part that override the at will doctrine. However, the Bobbitt decision presents some measure of difficulty in determining exactly what rights it created for an employee.
¶ 9. The appellants would apparently have us hold that any printed manual defining duties and obligations of the employee creates, by implication, a binding agreement that an employee will not be terminated unless a violation of some enumerated duty or obligation is demonstrated. We do not think that Bobbitt will support so broad a reading of the effect of an employee's manual on the terminability of an employment relation. The Bobbitt Court looked to the terms of the handbook itself and discovered, not a list of duties and obligations expected of an employee, but a detailed hierarchical scheme of potential offenses an employee might commit together with a concrete discipline plan for dealing with such offenses. This plan included a listing of ten Minor Offenses, sixteen Major Offenses, and ten Intolerable Offenses, together with a sanction for each such offense that was calibrated to correspond to the perceived gravity of the infraction. Bobbitt, 603 So.2d at 359-60. By way of example, Minor Offenses warranted only informal counseling, but were accumulated in the employee's file until four were accumulated, at which point they transformed themselves into two Major Offenses. Id. at 359. Major Offenses required more formal discipline and an accumulation of three Major Offenses warranted termination. Id. at 360. Intolerable Offenses, unsurprisingly, were ground for immediate dismissal. Id.
¶ 10. Bobbitt was terminated from his employment. The Orchard stated that the ground for his termination was "insubordination." There was no history of prior disciplinary offenses in Bobbitt's personnel file. "Insubordination" was an offense specifically catalogued in the employees' manual and plainly appeared as one of the ten Minor Offenses, punishable only by "discussion and a simple reminder." Id. at 359.
¶ 11. The Bobbitt Court, while giving due note to prior pronouncements by the court critical of the employment at will doctrine, nevertheless, framed the issue to be decided in the narrowest of terms:
The question in this case is when an employer furnishes its employees a detailed manual stating its rules of employment, and setting forth procedures that will be followed in event of infraction of its rules of employment, can it completely ignore the manual in discharging an employee for an infraction clearly covered by the manual? Put otherwise, when an offense specifically covered by the employer's own manual provides no *1144 more severe disciplining than a warning or counseling of the employee, may the employer pay no attention to the manual and fire the employee instead?
Id. at 361.
¶ 12. The court answered that narrowly-framed question by saying that "We hold the employer to its word." Id. The court, however, then went on to say that, by making the manual a part of Bobbitt's contract of employment, the court did not intend to "give the employees `tenure,' or create a right to employment for any definite length of time...." Id. Rather, the court said only that an employer must follow its own "provisions in reprimanding, suspending or discharging an employee for infractions specifically covered therein." Id. (emphasis supplied).
¶ 13. There is a marked contrast in the rigid, detailed disciplinary scheme in Bobbitt and the passage from the Wal-Mart manual relied upon by these appellants to give them a cause of action for wrongful termination. The provisions relating to "Coaching for Improvement" do not address itemized or even identifiable disciplinary infractions, but deal only with an employee whose on-the-job conduct "falls below the expectations of his or her position." We find nothing in the passage from this manual that could, by any definition, suggest the existence of a disciplinary system containing a graduated list of offenses with a correspondingly graduated list of sanctions that could have reasonably led these appellants to believe that they had a contractual right to be "Coached for Improvement" rather than terminated for any particular incident of misconduct. There simply is no provision in the Wal-Mart manual that "clearly covers" the offense attributed to these employees that Wal-Mart could be said to have ignored.
¶ 14. We note that the manual unequivocally states that there are infractions that are of sufficient gravity to warrant instant termination. The manual then goes on to inform the employee of some of those offenses, but the listing, on its face, states that it is an illustrative list and not an exhaustive one. It would require the most tortured construction of the manual's language to find that it created a graduated disciplinary system where only those offenses specifically listed would justify termination and that, therefore, every employee had a contractual right to be "Coached for Improvement" as to any misconduct not specifically identified in the list. We decline to impart such a meaning to the manual and we find support for that position in a Mississippi case to be discussed in connection with another point. We will, therefore, return briefly to this analysis later in this opinion.
¶ 15. There is an added consideration in the Bobbitt decision that goes to Wal-Mart's alternate argument in favor of summary judgment. In holding that the disciplinary scheme set out in the manual created a contractual obligation on the part of The Orchard, the supreme court specifically distinguished the case of Perry v. Sears, Roebuck & Co., 508 So.2d 1086 (Miss. 1987). In that case, the employees' handbook had a printed disclaimer warning the employees that nothing in the manual could be interpreted as interfering with Sears's right to terminate at will. Id. at 1088. The Perry Court specifically held that this "explicit statement in the personnel handbook ... is more than sufficient to defeat [Perry's] action insofar as it is based on breach of contract." Id. at 1089. The Bobbitt Court, by a sort of reverse reasoning, made it clear that it was not retreating from the principle that such disclaimers would be given effect. Instead of saying that, had The Orchard's manual contained a legal disclaimer, the court would have given it effect, the court chose, instead, to say that, if Sears's manual had not contained such a disclaimer, the court would have enforced the terms of the manual as having the force of contract. Bobbitt, 603 So.2d at 362.
¶ 16. Despite this interesting reverse twist in analysis, we conclude that the supreme court was reaffirming in Bobbitt *1145 the proposition that disclaimers in employees' manuals having their purpose of preserving the employment at will relationship cannot be ignored. Any doubt as to that idea was removed by the subsequent case of Hartle v. Packard Electric, 626 So.2d 106 (Miss.1993). In that case, Hartle was issued an employee's handbook that contained a list of possible grounds for termination. However, the handbook also contained a disclaimer that "the policies and procedures in [this] booklet do not constitute a legal contract, and do not modify the month-to-month employment relationship...." Id. at 109. The Hartle Court said that the disclaimer "maintains the month-to-month employment status and preserves Packard's right to terminate Hartle at will." Id. We can find no principled basis to distinguish the facts in Hartle from the facts in this case in a manner that would permit a different result.
¶ 17. We now return to the issue discussed earlier but temporarily discontinued. Hartle, besides reaffirming the notion that a legal disclaimer disavowing an intent to create an employment relationship different from employment at will will be given effect, also dealt with an additional issue. Disregarding the effect of the disclaimer, the Hartle Court additionally noted that all the Packard handbook did was provide a list of offenses that would potentially constitute grounds for discharge. Hartle had argued that, by listing those grounds for discharge, Packard had taken his employment out of an at will status and altered it to limit "Packard's discretion to discharge him except for just cause." Id. at 109. The supreme court rejected that proposition, relying on persuasive authority found in Reid v. Sears, Roebuck & Co. 790 F.2d 453 (6th Cir.1986). The supreme court quoted language in the Reid case that said:
We do not believe the listing of causes that "may result in the termination of your employment" in the Sears handbook detracted in any way from the language in the application or provided a reasonable basis for the conclusion that the plaintiff was employed under a "for cause" contract. The fact that certain acts were identified as conduct that might lead to discharge did not indicate that those acts were the exclusive permissible grounds for discharge.
Hartle, 626 So.2d at 110 (quoting Reid, 790 F.2d at 460) (emphasis supplied).
¶ 18. Relying on that authority, we likewise conclude that the mere act of listing, by way of example, certain conduct that might warrant immediate discharge, Wal-Mart did not create a reasonable contractually-based expectation in its employees that any offense not so listed would require Wal-Mart to engage in the "Coaching for Improvement" process.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF MONROE COUNTY IS AFFIRMED. THE COSTS OF THIS APPEAL ARE TO BE DIVIDED EQUALLY BETWEEN THE APPELLANTS.
KING AND SOUTHWICK, P.JJ., COLEMAN, LEE, AND THOMAS, JJ., CONCUR.
PAYNE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BRIDGES, DIAZ AND IRVING, JJ.
PAYNE, J., DISSENTING:
¶ 20. As I would reverse and remand for a trial on the merits of McCrory's and Thompson's claims, I must respectfully dissent from the majority's contrary resolution. I begin by reviewing our wellseasoned standard of review with regard to motions for summary judgment: "The standard for reviewing the granting or the denying of summary judgment is the same standard as is employed by the trial court under Rule 56(c). This Court conducts de novo review of orders granting or denying summary judgment and looks at all the evidentiary matters before itadmissions in pleadings, answers to interrogatories, depositions, affidavits, etc." Aetna Cas. *1146 and Sur. Co. v. Berry, 669 So.2d 56, 70 (Miss.1996) (citing Mantachie Natural Gas v. Miss. Valley Gas Co., 594 So.2d 1170, 1172 (Miss.1992)). The evidence must be viewed in the light most favorable to the party against whom the motion has been made. Russell v. Orr, 700 So.2d 619, 622 (Miss.1997); Northern Elec. Co. v. Phillips, 660 So.2d 1278, 1281(Miss.1995). The burden of showing that no genuine issue of material fact exists lies with the moving party, and we give the benefit of every reasonable doubt to the party against whom summary judgment is sought. Tucker v. Hinds County, 558 So.2d 869, 872 (Miss.1990). We do not try issues. Rather, we only determine whether there be issues to be tried. Townsend v. Estate of Gilbert, 616 So.2d 333, 335 (Miss.1993). Furthermore, motions for summary judgment are to be viewed with a skeptical eye, and if a trial court should err, it is better to err on the side of denying the motion. Aetna Cas. and Sur. Co., 669 So.2d at 70 (citing Ratliff v. Ratliff 500 So.2d 981, 981 (Miss.1986)). The focal point of our de novo review is on material facts. In defining a "material" fact in the context of summary judgments, the Mississippi Supreme Court has stated that "[t]he presence of fact issues in the record does not per se entitle a party to avoid summary judgment. The court must be convinced that the factual issue is a material one, one that matters in an outcome determinative sense." Simmons v. Thompson Mach. of Miss., 631 So.2d 798, 801 (Miss.1994) (quoting Shaw v. Burchfield, 481 So.2d 247, 252 (Miss.1985)) (emphasis added).
¶ 21. Our standard of review established, I move to my determination that the trial court inappropriately granted summary judgment in favor of Wal-Mart in this matter, and why I therefore would remand for a trial on the merits. First, Mississippi is clearly an employment at-will jurisdiction; however, on at least two occasions in the last fifteen years, the Mississippi Supreme Court has expressed its concerns over the harshness of this rule and has noted its interest in identifying a more humane and equitable alternative to the employment at-will rule. Shaw v. Burchfield, 481 So.2d 247 (Miss.1985); Perry v. Sears, Roebuck & Co., 508 So.2d 1086 (Miss.1987). Further, the Mississippi Supreme Court softened the callousness of the at-will doctrine in Bobbitt v. The Orchard, Ltd., which held that the defendant's employee manual providing disciplinary policies obligated the defendant to then follow those policies in carrying out employee discipline although the manual did not create any right of employment for a definite period of time. Bobbitt v. The Orchard, Ltd., 603 So.2d 356 (Miss.1992). The supreme court's rule in Bobbitt rested on the notion that where an employer chooses to set forth policies for its employees, it must therefore follow its own policies in dealing with its employees:
The question in this case is when an employer furnishes its employees a detailed manual stating its rules of employment, and setting forth procedures that will be followed in event of infraction of its rules of employment, can it completely ignore the manual in discharging an employee for an infraction clearly covered by the manual? Put otherwise, when an offense specifically covered by the employer's own manual provides no more severe disciplining than a warning or counseling of the employee, may the employer pay no attention to the manual and fire the employee instead? We hold the employer to its word.
Id. at 361.
¶ 22. The majority, I believe, applies Bobbitt too narrowly. In my view, when an employer provides its employees with personnel policies and procedures, Bobbitt and its progenies bind an employer to those policies and procedures. The majority reluctantly admits this, but then changes focus to the level of detail contained in those policies and procedures. The Wal-Mart employee manual provided for immediate termination for "gross misconduct," including being rude or abusive *1147 toward customers. In this case, deposition testimony by Brian Hardin, the regional personnel representative of Wal-Mart, established that McCrory and Thompson were dismissed some two years after the incident involving the customers, and then only after Wal-Mart settled a lawsuit arising out of that incident. No discipline was meted out at the time the incident occurred.
¶ 23. Further, the trial court relied solely on Hartle v. Packard Elec., 626 So.2d 106 (Miss.1993) as the basis for the summary judgment. In Hartle, the supreme court held that the employee handbook in that case supported a grant of summary judgment where the handbook provided "the policies and procedures in (this) booklet do not constitute a legal contract, and do not modify the month-to-month employment relationship (which in fact may not be altered, amended or extended by any employe[e], representative or agent...)...." Hartle, 626 So.2d at 109. However, the trial court failed to consider the dictates of Bobbitt in its decision. Thus, I believe that the trial court's sole reliance on Hartle failed to take into consideration the important principles set out in Bobbitt. In the case sub judice, Wal-Mart provided an employee manual providing specific types of conduct, though not exclusive in nature, which would lead to dismissal from the company's work force. One of those was rude or abusive conduct toward customers. Again, though, the termination did not occur until well after the incident involving the customer took place and after Wal-Mart settled the lawsuit brought regarding the action.
¶ 24. Issues of material fact existed as to whether Wal-Mart's actions in terminating McCrory and Thompson complied with the provisions of the employee handbook as required under Bobbitt and whether the basis for McCrory's and Thompson's dismissals was in violation of the employer's policies.
¶ 25. As I would reverse and remand for a trial on the merits, I dissent.
BRIDGES, DIAZ, AND IRVING, JJ., JOIN THIS SEPARATE WRITTEN OPINION.

Appendix A

COACHING
People generally want to perform well and be successful. Our Coaching for Improvement process is designed to inform an associate when she or he is not meeting the requirements and expectations of their position.
If an associate's performance or conduct falls below the expectations of his or her position, then the associate is informed of the problem and encouraged to take responsibility for his or her actions. This process will include developing a plan of action for improving performance to the required level, or changing conduct.
There are, however, certain actions of misconduct which may result in immediate terminationCoaching for Improvement will not be used to address gross misconduct. These actions include, but are not limited to, the following examples:
 Fraud.
 Theft.
 Unauthorized possession or use of Company property.
 Dishonesty/Compromised Integrity.
 Abuse of the associate discount.
 Falsification of Company records.
 Possession/use of a firearm or other dangerous weapon on Company property.
 Possession/use/consumption of alcohol and/or illegal drugs on Company property, and/or reporting to work under the influence of either substance.
 Fighting/assault or threats.
 Rude or abusive conduct toward a customer.
 Under-ringing/under-stocking or ringing your own purchases.
 Harassment.
*1148  Violating the Conflict of Interest policy.
 Violating the Statement of Ethics policy.