856 So.2d 465 (2003)
Patrick LIPPINCOTT, Appellant,
v.
MISSISSIPPI BUREAU OF NARCOTICS, Appellee.
No. 2001-CA-01702-COA.
Court of Appeals of Mississippi.
April 8, 2003.
Rehearing Denied July 22, 2003.
*466 Jim Waide, Tupelo, attorney for appellant.
Katherine S. Kerby, Columbus, attorney for appellee.
EN BANC.
SOUTHWICK, J., for the court.
¶ 1. Patrick Lippincott brought suit against the Mississippi Bureau of Narcotics for injuries suffered while assisting in an undercover drug buy. Summary judgment was granted to the Bureau. On appeal, Lippincott argues that disputes of material fact remain on his claims. We affirm.

FACTS
¶ 2. In furtherance of undercover operations of the Mississippi Bureau of Narcotics, Patrick Lippincott purchased narcotics from street dealers and then assisted in resulting prosecutions. Before becoming *467 so engaged, Lippincott and the Bureau entered into a written agreement.
¶ 3. On March 16, 1999, Lippincott was accompanied by Agent Devon Younger in order to purchase drugs. During the course of one such buy, the dealer displayed a firearm. Agent Younger produced his weapon and the two exchanged shots. Lippincott, caught in the crossfire, was wounded in the upper left arm. He suffered nerve damage.
¶ 4. Lippincott filed suit against the Bureau on March 7, 2000, alleging a breach of contract and negligence. Specifically, he claimed that the Bureau was negligent in placing a poorly trained agent in the vehicle with him, who negligently alerted the neighborhood to the police presence, and who thereby placed him in unreasonable danger. This was alleged to have been a breach of the Bureau's duty to provide a safe work environment. The Bureau's motion for summary judgment was granted. The trial court found no contract term which had been breached, and the Bureau was shielded from liability by the discretionary function exemption of the Mississippi Tort Claims Act.

DISCUSSION

1. Contract claim
¶ 5. Lippincott argues that his written agreement with the Bureau contained two implied clauses: (1) to act pursuant to the implied duty of good faith and fair dealing; and (2) to provide a safe work environment. He contends that the Bureau's negligence breached these implied terms. That, in turn, was a breach of the contract itself. The dissent speaks of an issue of fact of whether an oral contract existed. We do not find the pleadings, briefs or record present that issue. Instead, the matter raised for resolution concerns implied terms in a written contract.
¶ 6. On appeal, neither party disputes that a written agreement exists. There is a dispute about the effect of the agreement. The agreement itself states that only written terms between the parties are enforceable except for Lippincott's right to receive payments. Central to this issue is the question of whether any implied terms to this apparently complete agreement exist.
¶ 7. Mississippi statutorily implies the duty of good faith and fair dealing into contracts affected by the Uniform Commercial Code. Miss.Code Ann. § 75-1-203 (Rev.2002). Certain other kinds of contracts have been found to have such a covenant, such as insurance contracts. Hartford Accident and Indem. Co. v. Foster, 528 So.2d 255, 281 (Miss.1988). Occasionally it has been stated that all contracts contain the covenant. UHS-Qualicare v. Gulf Coast Community Hospital, 525 So.2d 746, 757 n. 8 (Miss.1987). The Supreme Court has receded from that view, though. For example, this implied duty has been said not to apply to employment contracts. Hartle v. Packard Electric, 626 So.2d 106, 110 (Miss. 1993). In Hartle, the court may only have been addressing the question of whether an implied duty was relevant to wrongful discharge. To require good faith in the discharge of an at-will employee would essentially repeal the at-will doctrine. An explanation of that problem was later made by the Supreme Court.
There are numerous Mississippi contract cases that state that all contracts contain an implied duty of good faith and fair dealing, but this Court has never recognized a cause of action based on such a duty arising from an employment at-will relationship. This Court has specifically held that at-will employment relationships are not governed by a covenant of good faith and fair dealing which *468 gives rise to a cause of action for wrongful termination.
Young v. North Mississippi Medical Center, 783 So.2d 661, 663 (Miss.2001).
¶ 8. We do not further examine Hartle or whether Lippincott was an employee or an independent contractor. That is because even presuming a good faith duty is applicable to the Lippincott-Bureau agreement, we cannot find that the duty was breached. "The breach of good faith is bad faith characterized by some conduct which violates standards of decency, fairness or reasonableness." Cenac v. Murry, 609 So.2d 1257, 1272 (Miss.1992). Bad faith, in turn, requires a showing of more than bad judgment or negligence; rather, "bad faith" implies some conscious wrongdoing "because of dishonest purpose or moral obliquity." Bailey v. Bailey, 724 So.2d 335, 338 (Miss.1998). Where Lippincott fails on this claim is in the absence of any evidence of bad faith.
¶ 9. Each factual allegation made by Lippincott to support his claim of breach of contract amounts to mere negligence. He does not claim the Bureau acted with "dishonest purpose or moral obliquity," or any variation thereof. Rather, he claims the agency made a series of bad choices. This is insufficient on its face to constitute a breach of an implied covenant of good faith and fair dealing.
¶ 10. In addition, we imply into contracts only those terms as may be expected to fulfill the parties' reasonable expectations. UHS-Qualicare, 525 So.2d at 755. Lippincott states repeatedly that the display of weapons during drug buys was common and even noted that acting as a confidential informant was work which routinely placed him in mortal danger. Having acknowledged the danger of the work that he undertook to perform, Lippincott's claim that he had a reasonable expectation of a safe work environment is untenable. Such an environment cannot be made safe. It is true that Lippincott's arguments could be recast as being that this workplace was more dangerous than it should have been. Yet that just places us back under an argument that the Bureau was negligent. That still does not show a violation of a good faith obligation.
¶ 11. Finally, each instance of negligence cited by Lippincott is a tort. Indeed, the claim of breach of the covenant of good faith itself asserts a tort, one flowing from tortious breach of contract. Braidfoot v. William Carey College, 793 So.2d 642, 651 (Miss.Ct.App.2000). Without the requisite showing of some form of bad faith, the torts Lippincott alleges cannot violate the implied covenant. Their consideration properly belongs under the tort analysis, to which we now turn.

2. Tort claim
¶ 12. The Mississippi Tort Claims Act is a limited waiver of governmental immunity from civil tort suits. Miss.Code Ann. § 11-46-5(1) (Rev.2002). Partial immunity is retained, such as for governmental employees who are performing a discretionary function. Miss.Code Ann. § 11-46-9(d) (Rev.2002). The Supreme Court has not allowed "discretionary function" to override a different and tautological exemption that no liability for negligence exists for the acts "of an employee of a governmental entity exercising ordinary care in reliance upon, or in the execution or performance of, or in the failure to execute or perform, a statute, ordinance or regulation...." Miss.Code Ann. § 11-46-9(b). That would mean that the immunity to a negligence suit provided under section 11-46-9(b) would apply only when there is no negligence, i.e., when "ordinary care" is exercised. See Brewer v. Burdette, 768 So.2d 920, 923 (Miss.2000); Robert F. *469 Walker, Cmt., "Mississippi Torts Claims Act: Is Discretionary Immunity Useless?," 71 MISS. L.J. 695, 704-10 (2001). It is not necessary to resolve these issues to determine the outcome of this case.
¶ 13. The trial court's reliance on the discretionary function exemption was understandable. It was the only one argued at the hearing on the motion for summary judgment. It was not, however, the only one advanced in the pleadings. The Bureau also raised this exemption:
A governmental entity and its employees... shall not be liable for any claim arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time the injury occurred.
Miss.Code Ann. § 11-46-9(c) (Rev.2002). Reckless disregard has been defined under this exemption as willful or wanton conduct, i.e., a wrongful act that is knowing and intentional. Turner v. City of Ruleville, 735 So.2d 226, 230 (Miss.1999). This is a much higher bar for the plaintiff to meet than mere negligence.
¶ 14. Having a dedicated exemption with a higher standard protects law enforcement from lawsuits which arise out of the performance of their duties. Maldonado v. Kelly, 768 So.2d 906, 909 (Miss. 2000). Law enforcement and firefighters occupy important and unusual positions in the universe of state actors. Because they are far more likely to face dangerous situations, they are also far more likely to face claims of liability. Id. Public policy as expressed in the immunity provision indicates the legislature's decision that such personnel are immune from negligence actions. They are to be held civilly accountable only for those acts amounting to recklessness as has been defined specifically under this exemption. Id. A legislative choice has been made that law enforcement officers need not prove that they first cooly considered all areas of possible negligence before responding. That this might cause more harm than it prevented was a possible conclusion.
¶ 15. Since a special standard exists for law enforcement, we believe it is the proper standard to be applied in this case under our de novo review. If the reckless disregard standard is not applied to tort claims against law enforcement officers, then it becomes meaningless.
¶ 16. Taking as true all of Lippincott's assertions of negligence, it is apparent that he cannot establish that the Bureau acted with reckless disregard for his safety. As with the claim of breach of the duty of good faith, he cannot prove knowingly or intentionally wrongful acts. All he is able to show is that the Bureau and its agents made a series of challengeable choices, from the level of training before sending an officer on a drug buy, to the directions given that officer, and to the care in using a weapon at this buy. Bad judgment is insufficient for liability. Lippincott has offered no evidence to meet the evidentiary burden of the reckless disregard standard.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF CLAY COUNTY GRANTING SUMMARY JUDGMENT TO THE MISSISSIPPI BUREAU OF NARCOTICS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., IRVING AND GRIFFIS, JJ., CONCUR. MYERS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY *470 KING, P.J., BRIDGES AND THOMAS, JJ. LEE AND CHANDLER, JJ., NOT PARTICIPATING.
MYERS, J., Dissenting.
¶ 18. I do not think that the facts presented by the majority provide more than a summary of the events. It is for that reason that I provide a more in-depth recitation of the facts.
¶ 19. Lippincott was an experienced cooperating individual (CI) who had made over forty buys for the MBN, most if not all by himself. As a CI, Lippincott signed an agreement with the MBN. The agreement outlined the rules that Lippincott had to follow while working with the MBN. Lippincott also signed an agreement to allow the MBN to wire him and tape conversations. Lippincott alleges that he agreed to make the drug buys for the MBN in exchange for $100 for each buy and that his pending drug charges would be "taken care of" by the MBN.
¶ 20. On March 16, 1999, Lippincott was instructed to make a buy. The MBN assigned Agent Devon Younger to accompany Lippincott. Agent Younger was a recent law enforcement training academy graduate. Agent Younger had never been involved in a real life undercover situation. He was to go with Lippincott and learn from Lippincott how actual undercover drug buys were supposed to be handled.
¶ 21. Lippincott and Agent Younger first tried to buy drugs from one dealer. Someone called out, "Hey, that's the police," and the dealer snatched the drugs out of Lippincott's hand and ran off before the transaction was complete. Lippincott and Agent Younger left the area and met with the other MBN agents.
¶ 22. Even though the earlier attempt to purchase drugs had failed, Lippincott and Agent Younger attempted to make another drug buy. This was done even though some of the surveillance equipment was malfunctioning. The two proceeded back to the same community where the earlier attempted buy had occurred. Lippincott alleges he instructed the agent that this particular drug dealer was apt to display a firearm when encountering a new buyer and that Agent Younger should not panic. He also alleges that Agent Younger instructed Lippincott to park the truck in which they were riding in a manner that was facing out of the driveway and leave the truck running. Lippincott questioned the instruction because he believed it would make them look suspicious.
¶ 23. The drug dealer was seated outside a house and called for Lippincott and Agent Younger to get out of the truck. Lippincott alleges Agent Younger instructed him to stay in the truck. The drug dealer approached the truck and began the transaction. The drug dealer then brandished his firearm. Agent Younger responded by pulling his firearm out of his holster. An exchange of gunfire erupted between the drug dealer, who was standing outside the driver's side door, and Agent Younger, who was sitting in the truck's passenger seat. During the exchange, Lippincott was shot in the arm. Agent Younger put the truck in drive and pressed the gas pedal causing the truck to speed away and run into a telephone pole guy wire before Lippincott could regain control of the truck. The two met with the other MBN agents and sought medical help.
¶ 24. An investigation determined that the MBN lacked sufficient evidence to conclude who shot Lippincott. The report also commended Agent Younger for his bravery and aggressive actions. Lippincott alleges that he suffered radial nerve damage to the wounded area.

*471 ANALYSIS
¶ 25. Mississippi Rule of Civil Procedure 56(b) permits a defending party to seek a summary judgment in his favor as to any or all parts of the complaint filed against him. Summary judgment is appropriate only where there are no genuine issues of material fact; it is not a substitute for a trial of disputed fact issues. M.R.C.P. 56. A trial court is not permitted to try issues of fact on a Rule 56 motion. Rather, it may only decide whether there are issues to be tried. Id. Furthermore, this Court conducts a de novo review of summary judgments awarded by trial courts. Canizaro v. Mobile Comm. Corp. of Am., 655 So.2d 25, 28 (Miss.1995).
¶ 26. Consequently, summary judgment should be granted only where the pleadings, discovery materials, and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. M.R.C.P. 56. If the appellate court finds beyond any reasonable doubt that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law, it will affirm the trial court's decision to grant summary judgment, otherwise reversal is the only recourse. Yowell v. James Harkins Builder, Inc., 645 So.2d 1340, 1343 (Miss.1994).
¶ 27. Moreover, once a motion for summary judgment is filed, the opposing party "must rebut by producing significant probative evidence showing that there are indeed genuine issues for trial. This burden of rebuttal arises, however, only after the moving party has satisfied its burden of proving that no genuine issue of material fact exists...." Foster v. Noel, 715 So.2d 174, 180(¶ 35) (Miss.1998) (citations omitted). The evidence must be viewed in the light most favorable to the party against whom the motion has been made. Russell v. Orr, 700 So.2d 619, 622(¶ 8) (Miss.1997). The burden of showing that no genuine issue of material fact exists lies with the moving party, and we give the benefit of every reasonable doubt to the party against whom summary judgment is sought. Tucker v. Hinds County, 558 So.2d 869, 872 (Miss.1990).

1. THE LOWER COURT ERRED IN FINDING AN ABSENCE OF MATERIAL FACT DEMONSTRATING A CONTRACT BETWEEN LIPPINCOTT AND THE MBN; AND

2. THERE WERE ISSUES OF MATERIAL FACT AS TO WHETHER THE MBN BREACHED THE CONTRACT.
¶ 28. Because these two issues are so interconnected, I shall address the two as one. These issues are founded in a contract claim by Lippincott against the MBN. Lippincott argues that there was an issue of material fact as to if an oral contract existed and whether the contract was breached by the MBN when Agent Younger shot Lippincott.
¶ 29. For a contract to exist, there must be (1) two or more contracting parties; (2) consideration; (3) an agreement that is sufficiently definite; (4) legal capacity to contract; (5) mutual assent; and (6) no legal prohibition against the contract formation. Hunt v. Coker, 741 So.2d 1011, 1015(¶ 9) (Miss.Ct.App.1999). In addition to the written agreement, Lippincott alleges that in exchange for making drug buys for the MBN, he would receive $100 and not face drug charges pending against him. It does not appear that the MBN ever denied these allegations.
¶ 30. The appellant argues that the trial court was not clear as to whether the summary judgment as to the contract claim was based upon the non-existence of a contract or the absence of a breach of contract. The majority opinion states that the trial court found no contract term *472 which had been breached. In actuality, the trial court stated that "[t]he Court finds no contract or contract term existed between the parties which has been breached in any way by the defendant." (emphasis added). The MBN argues, and the majority agrees, that the trial court properly found that the only contract was the written agreement between the MBN and Lippincott and that there was no breach of the agreement. I do not read that much from the trial court's opinion.
¶ 31. The majority criticizes my analysis of the contract issue relating to the possibility of an oral contract. The majority states that the pleadings, briefs, and records do not present that issue. The appellant's first issue in his brief deals with whether or not a contract existed and the appellee responded with a discussion of unwritten implied contracts. Because of the perceived ambiguity of the trial court's order by counsel, I address the issue of whether an oral contract could be found to exist in addition to the written agreement.

Oral Contract
¶ 32. There was an actual written agreement and according to the MBN, it read "[a]ny agreements with the MBN are null and void unless reduced to writing and signed by the district lieutenant." The MBN contends that because of this language in the agreement signed by Lippincott, there are no oral contracts and since the specific sections of the agreement signed by Lippincott do not contain any provision dealing with what Lippincott is seeking, thus the summary judgment is proper. Further, the MBN argues that the agreement signed by Lippincott acknowledges that he is not an employee or agent of the State; therefore, no employee contractual relationship could exist.
¶ 33. After reviewing the written agreement, I discovered that the section quoted by the MBN actually reads "[e]xcept payments for services rendered, any agreements with the MBN are null and void unless reduced to writing and signed by the district lieutenant." (emphasis added). The agreement also closes with a section that provides that if the CI fails to meet the required conditions, "all written or oral agreements "with the MBN are null and void. (emphasis added). Because of this, I think that a jury could have determined an oral contract existed in addition to the written agreement.

Written Contract
¶ 34. The majority focuses its attention on the written agreement and implied duties. The majority seems to think that this was a suit alleging a wrongful discharge. It spends much time dealing with the implied duty of good faith and fair dealing regarding at-will employment contracts. I agree with the case law cited by the majority and the principles set forth concerning at-will employment contracts. I do not think anyone on this Court would disagree with the fact that the supreme court has settled the rule that to inject an implied duty of good faith and fair dealing into an employment contract in order to give rise to a cause of action for wrongful termination would effectively destroy the at-will doctrine.
¶ 35. Unless Agent Younger was attempting to discharge Lippincott from MBN service when he discharged a bullet into Lippincott's arm, I have to question the majority's reasoning for discussing this legal principle. I think that the implied duties of good faith and fair dealing can exist in employment contracts if not related to wrongful termination.
¶ 36. The majority continues by presuming that even if the good faith duty is applicable to the agreement, there was no breach. I think that the majority is wrong in deciding whether or not a breach existed. *473 I believe that this is a jury issue and the majority has allowed the power of the jury to be usurped.
¶ 37. The majority concludes its discussion of the contract issue by discussing the reasonable expectation of a safe work environment and how it is inapplicable in Lippincott's case. The majority makes the statement that such an environment can not be made safe. Safe is a variable term. There are varying degrees of safe. While I do not think any environment can be entirely safe, an environment can be made as safe as possible. Some occupations carry with it a greater risk of danger. Agent Younger was warned of the drug dealer's method of operation but failed to heed the cautionary words of Lippincott. Lippincott had successfully made over forty buys himself without major incident. Drug deals occur all the time without people being shot. One only needs to look at the number of drug cases that come before this Court to see that. Accordingly, I think this was a jury issue.
¶ 38. I think that there were questions for the jury to decide concerning contractual matters. Those questions are whether there was an oral contract and if there was, did the MBN breach the terms of the contract, and did the written agreement between Lippincott and the MBN give rise to any implied terms and were those terms breached. Accordingly, I would reverse the granting of summary judgment as to the contract issue.

3. THERE ARE ISSUES OF MATERIAL FACT AS TO LIABILITY UNDER THE MISSISSIPPI TORT CLAIMS ACT.
¶ 39. Lippincott's next assertion of error deals with tort liability. The MBN charges that the trial court properly found that summary judgment was applicable. Tort immunity is granted to the State statutorily. This immunity from tort suits is waived in part.
Notwithstanding the immunity granted in Section 11-46-3 ... the immunity of the state and its political subdivisions from claims for money damages arising out of the torts of such governmental entities and the torts of their employees while acting within the course and scope of their employment is hereby waived... provided, however, immunity of a governmental entity in any such case shall be waived only to the extent of the maximum amount of liability provided for in Section 11-46-15.
Miss.Code Ann. § 11-46-5(1) (Rev.2002).
¶ 40. The trial judge stated in his ruling of summary judgment that this case fell squarely within the discretionary exemption of Miss.Code Ann. § 11-46-9(1)(d). It reads:
A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim: (d) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused;
Miss.Code Ann. § 11-46-9(1)(d) (Rev. 2002).
¶ 41. To determine if an act was discretionary, this Court must first answer two questions: (1) whether the activity involved an element of choice or judgment, and if so, (2) whether the choice or judgment in supervision involved social, economic, or political policy alternatives. Bridges v. Pearl River Valley Water Supply Dist., 793 So.2d 584, 588(¶ 15) (Miss. 2001). The trial court made no determination of this. I think that the summary judgment was erroneous because the determination of ordinary care rests squarely with a jury.
*474 ¶ 42. The majority states that the discretionary exemption was the one relied on by the trial judge as evidenced in his order because it was the only one argued at the hearing. I agree, but the majority relies on Miss.Code Ann. § 11-46-9(c) (Rev. 2002) to affirm the granting of the summary judgment. This exemption was raised in the pleadings of the MBN but not argued at the hearing nor evidenced as being relied on by the trial judge. The order lacks any reference to Miss.Code Ann. § 11-46-9(c) (Rev.2002).
¶ 43. I agree with the majority that this exemption should be discussed in our de novo review. I think that with the facts in this case, there was a genuine issue of material fact as to if the MBN agent acted with reckless disregard when shooting Lippincott, whether the MBN acted in reckless disregard when placing an inexperienced agent with Lippincott, and whether the MBN acted in reckless disregard when sending Lippincott and Younger, with malfunctioning equipment, back to the same community where an earlier attempted buy had failed. Accordingly, I would reverse the granting of summary judgment on the tort issue.

CONCLUSION
¶ 44. Although summary judgment is important in our legal system, I do not think it is applicable in this case. It is unfortunate that this situation occurred, but at least no one was killed in the melee. I think if an MBN agent, rather than a CI had been shot, the issue would have gone before a jury, rather than summary judgment being granted in favor of the defendant.
KING, P.J., BRIDGES AND THOMAS, JJ., JOIN THIS SEPARATE OPINION.