**IN THE SUPREME COURT OF MISSISSIPPI**
**NO. 1999-CA-01849-SCT**

*LISA LEE*

*v.*

*GOLDEN TRIANGLE PLANNING & DEVELOPMENT DISTRICT, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/06/1999 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOSEPH N. STUDDARD |
| ATTORNEYS FOR APPELLEE: | S. T. RAYBURN |
| | PAIGE BRUCE RAYBURN |
| NATURE OF THE CASE: | CIVIL - EMPLOYMENT LAW |
| DISPOSITION: | AFFIRMED - 01/18/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 2/8/2001 |

**BEFORE PITTMAN, C.J., MILLS AND WALLER, JJ.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1. Lisa Lee appeals from a summary judgment dismissing her complaint and action against her former employer, Golden Triangle Planning & Development District, Inc. (Golden Triangle) for wrongful termination of employment and intentional infliction of emotional distress. Lee's appeal focuses on the basic issues of whether the employee handbook created a contract of employment; whether she was discharged in a retaliatory manner for exercising rights given her in the handbook; and whether Golden Triangle's conduct rose to the level of the intentional infliction of emotional distress. Because Lee failed to create a genuine issue of material fact on the essential elements of her claims, we affirm the circuit court's grant of summary judgment in favor of Golden Triangle.

## FACTS AND PROCEEDINGS BELOW

¶2. Lee was hired by Golden Triangle as a program specialist in its child care program. At the time she was employed, Lee received a copy of Golden Triangle's employee handbook and signed a statement acknowledging that she had read and understood the handbook. The handbook contained a disclaimer negating the existence of any contract of employment. There was no other agreement or understanding, either written or oral, between Golden Triangle and Lee concerning her employment, and Lee does not claim that she was an employee for a definite term. Lee was subsequently promoted to the position of Child

Care Program Director, a position she held until she was terminated.

¶3. Annual employee performance evaluations were given, and the final evaluation preceding Lee's termination characterized her job performance as "poor." Specifically, the evaluation cited Lee's failure to act responsibly and adequately supervise her staff which resulted in child care files lacking the required documentation, a situation potentially resulting in the loss of tens of thousands of dollars in allowed costs, and which, at best, demonstrated a total disregard for the basic standards of accountability and good business practices. As a result, Lee was demoted from Child Care Program Director to Child Care Specialist. Because Lee declined the new position, Golden Triangle issued a formal notification of termination to Lee.

¶4. Following procedures outlined in the employee handbook, Lee filed a grievance, and a hearing was held before the Grievance Committee. Testimony from both Golden Triangle and Lee, who was represented by counsel, was given. Subsequently, the Grievance Committee notified Lee by letter that the termination was upheld. Lee then filed suit in Oktibbeha County Circuit Court alleging breach of employment contract and intentional infliction of emotional distress.

## STANDARD OF REVIEW

¶5. This Court conducts de novo review of orders granting or denying summary judgment and looks at all the evidentiary matters before it -- admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. *Aetna Cas. & Surety Co. v. Berry,* 669 So. 2d 56, 70 (Miss. 1996). This Court's review is governed by the same standard used by the circuit court under Rule 56(c) of the Mississippi Rules of Civil Procedure. *Cothern v. Vickers, Inc.,* 759 So. 2d 1241, 1245 (Miss. 2000); *Brown v. Credit Ctr., Inc.,* 444 So. 2d 358, 362 (Miss. 1983). The evidence must be viewed in the light most favorable to the party against whom the motion has been made. *Aetna,* 669 So. 2d at 70. If there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, summary judgment should be granted in the moving party's favor. *Cothern,* 759 So. 2d at 1245; *Brown,* 444 So. 2d at 362.

¶6. The burden of demonstrating that no genuine issue of material fact exists is on the moving party. *Id.* If there is doubt as to whether or not a fact issue exists, it should be resolved in favor of the non-moving party. That is, it is better to err on the side of denying a motion for summary judgment if a doubt exists as to whether a genuine issue of fact exists. *Aetna,* 669 So. 2d at 70 (citing *Ratliff v. Ratliff,* 500 So. 2d 981 (Miss. 1986)).

## DISCUSSION

### I. WAS THE DISCLAIMER CONTAINED IN THE HANDBOOK SUFFICIENT TO NEGATE A CONTRACT OF EMPLOYMENT?

*Creation of Employment Contract*

¶7. The employee handbook at issue failed to create a contract of employment because it contained a valid disclaimer: "This handbook and the presentation thereof is not to be considered an actual or implied contract between the District and any employee." Lee claims that this language was insufficient to preserve the at-will status of her employment, arguing that a disclaimer must expressly state that the employer can "terminate its employees with or without cause," in order to retain the at-will status.

¶8. A similar disclaimer was found sufficient to preserve the at-will status of employment where the following language was used, "This handbook is not a contract of employment, either express or implied; confers no property interest in one's job . . . ." *McDaniel v. Mississippi Baptist Med. Ctr.,* 869 F. Supp. 445, 452 (S.D. Miss. 1994). Since the language expressly preserved the at-will nature of the plaintiff's employment relationship and preserved the right of the hospital to terminate its employees with or without cause, nothing in the handbook gave the plaintiff a right to be disciplined or terminated in accordance with the policies expressed therein. *Id.* at 453.

¶9. In another similar case, this Court held, "An employee handbook cannot be considered a contract between the employer and the employee where the handbook explicitly states that the employee can be terminated at will." *Hartle v. Packard Elec.,* 626 So. 2d 106, 109 (Miss. 1993). In *Hartle*, the last paragraph of the handbook contained the following language: "The policies and procedures in [this] handbook do not constitute a legal contract . . . ." *Id.*

¶10. In an attempt to distinguish her case, Lee argues that *Bobbitt v. The Orchard, Ltd.*, 603 So. 2d 356 (Miss. 1994), should apply. In *Bobbitt* we held that the employer must strictly adhere to the terms set forth in the handbook. *Id.* at 357. However, there was no disclaimer preserving the at-will status of employment. *Id.* Absent a disclaimer to the contrary, the detailed procedures placed in the handbook created a contract of employment. *Id.* at 361.

¶11. Nowhere in the *Bobbitt* decision did the Court state that an employer must use specific language in a disclaimer to preserve the at-will nature of employment. Where there is "something" in the employee handbook disclaiming a contract of employment, the rule developed in *Bobbitt* does not apply. *Id.* at 453. As correctly noted recently by the Court of Appeals, "[t]he supreme court was reaffirming in *Bobbitt* the proposition that disclaimers in employees' manuals having their purpose of preserving the employment at-will relationship cannot be ignored." *McCrory v. Wal Mart Stores, Inc.,* 755 So. 2d 1141, 1144-45 (Miss. Ct. App. 1999).

¶12. We find that Golden Triangle's handbook failed to create a contract of employment.

*Violation of the Employee Handbook*

¶13. Notwithstanding the valid disclaimer, Lee claims that her termination was in violation of the employee handbook. Lee's argument centers on *Bobbitt*, where the Court held the employer was bound to follow rules it created in the employee manual:

> When an employer publishes and disseminates to its employees a manual setting forth the proceedings which will be followed in event of an employee's infraction of rules, and there is nothing in the employment contract to the contrary, then the employer will be required to follow its own manual in disciplining or discharging employees for infractions or misconduct specifically covered by the manual.

603 So. 2d at 357.

¶14. Lee contends that the handbook created by Golden Triangle contained various provisions which apply to her case. In the formal termination letter sent to Lee, the reasons given for her termination related to violations listed in the handbook. Specifically, the letter stated that Lee had violated Section VIII, Subsections (A)(1) and (A)(9), which relate to incompetence and unlawful conduct.[1]

¶15. Lee claims that during the course of her employment, she never violated any of the listed reasons resulting in "just cause" discipline and that Golden Triangle failed to follow the discipline ladder set forth in the employee handbook, Section VIII, Subsection B.[(2)]

¶16. Lee argues that because the handbook listed reasons for "just cause" termination, coupled with procedures to be generally followed, Golden Triangle should be strictly held to follow their provisions and that its failure to do so violated the handbook. It should be noted that the pertinent section in the handbook that Lee is referring to simply states, "The following steps will *generally* be followed in disciplinary matters."

¶17. In *Hartle*, the employee handbook contained certain reasons that *may* result in discharge. *Hartle,* 626 So. 2d at 110. In referring to a Sixth Circuit opinion, this Court agreed that the listing of causes that "may result in termination" failed to create in the plaintiff any reasonable basis that they were under a "for cause" contract. *Id.* (citing *Reid v. Sears, Roebuck & Co.,* 790 F.2d 453 (6th Cir. 1986)).

¶18. Golden Triangle followed the procedures outlined in the employee handbook. The record clearly reflects, and Lee does not dispute, that a hearing was actually afforded her. Not only was Lee represented by counsel as allowed in the handbook, but she also raised the issue behind her termination. In Lee's deposition of A. D. Johnson, a member of the panel that chaired her hearing, the following testimony was elicited:

> BY JOSEPH STUDDARD (Lee's counsel):
>
> Q: Did you also hear some testimony about the fact she was fired because she hired an attorney?
>
> BY A.D. JOHNSON (grievance committee member):
>
> A: Yes, I remember hearing that. In this room right here.
>
> Q: Okay. What effect did that have on the initial decision of the grievance committee?
>
> A: It didn't have an effect on me. The lady had a right to do that. She didn't have the right to be fired because she hired an attorney. She was following the handbook.
>
> Q: She was fired for that reason. How did y'all justify - her testimony that she was fired because she hired an attorney and because she asked for a hearing before the grievance committee; or was the other side saying she was fired for this file business? How did y'all make those balance out?
>
> A: We went with what the executive director said. He said he based his decision of termination on what happened and not for hiring an attorney because that was her privilege.

¶19. Additional evidence negating Lee's claim that she was fired for acting in accordance with handbook procedures is demonstrated in the deposition of Rupert L. "Rudy" Johnson, Lee's immediate supervisor and executive director of Golden Triangle:

> BY JOSEPH STUDDARD (Lee's counsel):
>
> Q: I guess the ultimate question . . . would be: Did she leave because of her own volition or did she do it because you told her she was fired?

BY RUPERT L. "RUDY" JOHNSON (executive director):

A: In my heart, I gave her every opportunity. Even the board asked her at the hearing, "Do you still want to work" - "Do you want to accept this?" And she said "no." In my heart - I don't know too many people that would give you an option on this big a screw-up if you still want to work somewhere or not. You know, it's the door. But like I said before, I did not want to cost Lisa, and I didn't cost Lisa -- this is Lisa's decision. . . . You've got an option to stay, and these options are this: You're going to take -- you're still going to make $20,000 a year; you're still going to have health insurance; you're still going to have life insurance; you're still going to have short and long term disability; I'm still going to match your salary up to 10%, dollar for dollar, for your retirement; you're still going to travel. Nothing changed, except the reduction in responsibilities and the reduction in her salary, and they coincide. You don't get paid the same salary if you do less work in the real world.

¶20. Lee fails to raise any genuine issue of material fact that her termination was in violation of the employee handbook.

### II. DID GOLDEN TRIANGLE'S CONDUCT IN TERMINATING LEE'S EMPLOYMENT AMOUNT TO A RETALIATORY DISCHARGE?

¶21. Lee alleges that her termination by Golden Triangle was a retaliatory discharge in violation of Mississippi law in that she was fired for requesting a hearing as provided in the employee handbook and for hiring an attorney to assist her during her hearing. Lee's argument seems to be that even absent a finding of a contract of employment, *Bobbitt* should be extended to protect employees who, in relying on appeal and grievance procedures set forth in the employee handbook, are terminated by their employer for exercising such rights.

¶22. Mississippi follows the common law rule that a contract of employment for an indefinite term may be terminated at the will of either party. *Bobbitt*, 603 So. 2d at 360 (citing *Kelly v. Mississippi Valley Gas Co.,* 397 So. 2d 874 (Miss. 1981)).

¶23. This Court has carved out two narrow exceptions where an at-will employee can sue for wrongful discharge. *Hust v. Forrest Gen. Hosp.,* 762 So. 2d 298, 301 (Miss. 2000). Where an employee is terminated because he or she has refused to participate in illegal activity or has reported the illegal activity of his employer to the employer or to anyone else, a suit for wrongful discharge can be brought, despite the at-will status of the employee.[3] *Id.* Lee's claim clearly falls outside of the recognized exceptions to the employee at-will doctrine. Lee also fails to offer any proof that her discharge was in any way related to the exercise of appeal rights set forth in the employee handbook.

### III. WAS THE EVIDENCE SUFFICIENT TO SHOW, AS A MATTER OF LAW, THAT GOLDEN TRIANGLE'S CONDUCT FAILED TO RISE TO THE LEVEL OF THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UPON LEE?

¶24. A claim for intentional infliction of emotional distress will not ordinarily lie for mere employment disputes. *Pegues v. Emerson Elec. Co.,* 913 F. Supp. 976, 982 (N.D. Miss. 1996) (citing *Jenkins v. City of Grenada,* 813 F. Supp. 443, 447 (N.D. Miss. 1993)); *Brown v. Inter-City Fed. Bank,* 738 So. 2d 262, 265 (Miss. Ct. App. 1999). "Recognition of a cause of action for intentional infliction of emotional distress in a workplace environment has usually been limited to cases involving a pattern of

deliberate, repeated harassment over a period of time." ***Pegues,*** 913 F. Supp. at 982-83 (citing ***White v. Monsanto Co.,*** 585 So. 2d 1205, 1210 (La. 1991)). " [I]t is the nature of the act itself -- [not] the seriousness of [its] consequences -- [that] gives impetus to legal redress." ***Glasgow v. Sherwin-Williams Co.,*** 901 F. Supp. 1185, 1191 (N.D. Miss. 1995) (citing ***Sears, Roebuck & Co. v. Devers,*** 405 So. 2d 898, 902 (Miss. 1981)), *aff'd mem.*, 146 F.3d 867 (5th Cir. 1998).

¶25. Since no contract existed between the parties and Golden Triangle's conduct fell well short of retaliatory discharge, no claim for the intentional infliction of emotional distress can lie. *See **Cothern**,* 759 So. 2d at 1250.

## CONCLUSION

¶26. For the foregoing reasons, the Oktibbeha County Circuit Court's grant of summary judgment in favor of Golden Triangle is affirmed.

¶27. **AFFIRMED.**

> **PITTMAN, C.J., BANKS, P.J., SMITH, MILLS AND COBB, JJ., CONCUR. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, J. EASLEY, J., NOT PARTICIPATING.**
>
> **McRAE, PRESIDING JUSTICE, DISSENTING**:

¶28. The majority asserts that the disclaimer included in the employee handbook is not sufficient to negate an employee-at-will contract. Because the majority asserts Golden Triangle should not be held to the same provisions it forces upon its employees, I dissent. This appeal is from the summary judgment granted to Golden Triangle by the circuit court, stating there were no issues to be tried by a jury. Lee did present genuine issues of material fact as to whether Golden Triangle violated the provisions of its employee handbook in terminating her position, and this case should have been tried before a jury.

¶29. ***Bobbitt v. The Orchard, Ltd.***, 603 So. 2d 356, 361 (Miss. 1992), stated that the employee handbook created, "an obligation on the part of The Orchard to follow its provisions in reprimanding, suspending or discharging an employee for infractions specifically covered therein." The majority asserts that because Golden Triangle could terminate Lee at-will, the other provisions of the handbook are inapplicable to the current situation. Golden Triangle should be held to the provisions it forced upon its own employees. Golden Triangle encouraged its employees to adhere to the provisions of the handbook, and therefore, led its employees to believe that the provisions would be enforced, whether to their benefit or not.

¶30. Requiring employees to adhere to the provisions of the employee handbook, and then not enforcing the same provisions when it appears unfavorable to the employer does not establish or foster a good working relationship. The employee handbook acts as a two-way street, informing the employee of their benefits as well as the consequences of their actions. An employer should not be allowed to ignore and disregard all the provisions in an employee handbook if this material is disseminated to all employees, and the employees agree to abide by it.

¶31. ***Bobbitt*** focuses its inquiry on specific questions of whether an employer must strictly adhere to and apply the provisions of an employee handbook, concluding that an employer should keep his word to the employees. The Court posed the following questions, answering both in the negative.

The question in this case is when an employer furnishes its employees a detailed manual stating its rules of employment, and setting forth procedures that will be followed in event of infraction of its rules of employment, can it completely ignore the manual in discharging an employee for an infraction clearly covered by the manual? Put otherwise, when an offense specifically covered by the employer's own manual provides no more severe disciplining than a warning or counseling of the employee, may the employer pay no attention to the manual and fire the employee instead?

*Bobbitt*, 603 So. 2d at 361.

¶32. The situation in *Bobbitt* is quite similar to the present facts. In *Bobbitt*, a nurse was discharged after a confrontation with her superior on a charge of insubordination. The employee handbook, provided to the employees, contained an elaborate section for conduct and disciplinary procedures. This section included categories for 10 minor offenses, 16 major offenses, and 10 intolerable offenses, followed by remedies for these offenses. For example, a fourth minor offense was considered a second major offense. *Id.* at 359-60. Bobbitt was terminated for her first offense, which would have been considered a major offense under the guidelines, the remedy for which would have been, "counseling and formal written warnings." *Id.* at 360. The Court held that the employer was wrong. The Court further held that because the manual was given to all the employees, it became part of a contract. While this manual may not have provided the employees with "tenure" or a right for employment for a definite length of time, the manual did create an obligation on the part of the employer to follow "its provisions in reprimanding, suspending or discharging an employee for infractions specifically covered therein." *Id.* at 361.

¶33. Here, Lee was demoted due to her alleged violation of specific provisions of the employee handbook. These provisions were subsections (A)(1) and (A)(9) of Section VIII, entitled "Just Causes," as cited to by the majority. Section VIII, subsection (B)(5) of the "Discipline Procedures," section states, "Employees discharged for good and/or just cause will be so notified in writing, and standard Grievance Procedure as outlined in Section XI shall apply." The majority argues that the above subsection under "Discipline Procedures" is optional due to the use of this section's introductory sentence, "the following steps will generally be followed in disciplinary actions." However, Section VIII, subsection (B)(5) clearly utilizes the word "shall," making the use of these procedures mandatory.

¶34. Although Lee's demotion was based on specific infractions of the "Just Causes" section, her punishment of being demoted was not the proper procedure, based on the "discipline procedures" section. Under discipline procedures, Lee should have been afforded the three less stringent forms of discipline, before proceeding to the one calling for a "disciplinary transfer" or a "demotion." Instead of following the procedure included in the handbook, Golden Triangle immediately offered Lee the options of being demoted or being terminated. When Lee filed for a hearing before the grievance committee, as was her right according to the handbook, she received a termination letter within two days. Lee was not afforded the grievance hearing prior to her termination.

¶35. In addition, in his deposition testimony the Executive Director of Golden Triangle, Rupert L. "Rudy" Johnson ("Johnson"), indicated that, from his point of view, the employee handbook was a document to be followed. Johnson testified to requiring Lee to sign a statement on August 26, 1993, that read, "[p]lease be advised that any grievance or complaints against the Golden Triangle Planning & Development District must follow the procedures as outlined in employment handbook in personnel policies and procedures, section 11, pages 40-42." Johnson's testimony also indicated that Lee was fired because she had obtained an

attorney and requested a grievance hearing. Johnson testified that he made the statement, "[w]ell, since you got an attorney...you're fired. Just go on home." This statement differs from the reasons given in Lee's letter of termination, i.e., the specific violations of the employee handbook discussed above.

¶36. Lee has identified disputed issues of material fact as to whether proper procedure the was followed by her employer under the employee handbook and as to whether she should have been terminated. Golden Triangle violated its own policies and procedures by not following its own procedures for the termination of Lee, yet she was held to the standards of conduct in the employee handbook. The facts above present conflicting issues between the parties; and therefore, this case should have been presented to a jury for its determination. The summary judgment granted to Golden Triangle should be reversed, and this case should be remanded for a jury trial. For the above reasons, I dissent.

**DIAZ, J., JOINS THIS OPINION.**

1. A. Just Causes

An employee may be subject to disciplinary action by the Executive Director for failure to perform duties in an acceptable manner, or for personal actions which discredit Golden Triangle. Just causes for disciplinary actions include, but are not limited to the following:

1. Incompetence in the performance of duties.

****

9. Unlawful conduct, or violation of, or refusal to comply with pertinent laws and regulations when such conduct impairs the efficiency of Golden Triangle or brings it into disrepute.

2. B. Discipline Procedures

The following steps will generally be followed in disciplinary actions. Disciplinary actions involving staff members will be initiated by the Executive Director . . . .

1. An informal warning, verbal or written, will be given. Specific problem areas to be corrected will be cited.

2. An official written reprimand will be given. This reprimand will be signed by the employee, and will become a permanent part of the personnel file of the employee.

3. A suspension without pay may be implemented. The length of this suspension will be determined by the Executive Director, based on the seriousness of the offense, not to exceed thirty calendar days in one calendar year. When a suspension is made preliminary of dismissal proceedings, an employee may be dismissed at the end of the fifteenth (15th) day unless that employee has filed an appeal with the Grievance Committee.

4. A disciplinary transfer or demotion may be implemented, if such action will resolve a conflict or solve a problem of incompetence.

5. When all other disciplinary measures fail, the employee will be discharged. Discharges can, however, be an immediate response to certain of the just causes listed in Section VIII, Subsection A.

Employees discharged for good and/or just cause will be so notified in writing, and standard Grievance Procedures as outlined in Section IX shall apply.

3. For a detailed discussion of exceptions to employment at-will recognized in Mississippi, see *Samples v. Hall of Miss., Inc.*, 673 F. Supp 1413, 1415 (N.D. Miss. 1987).