911 So.2d 1030 (2005)
Stanley STARKS, Appellant
v.
The CITY OF FAYETTE, Mayor Rogers W. King and the Board of Aldermen of the City of Fayette, Appellees.
No. 2004-CA-01451-COA.
Court of Appeals of Mississippi.
September 27, 2005.
*1031 Jeffrey Todd Waycaster, Natchez, attorney for appellant.
Kenneth B. Rector, Vicksburg, attorney for appellees.
Before LEE, P.J., GRIFFIS and ISHEE, JJ.
LEE, P.J., for the Court.

FACTS AND PROCEDURAL HISTORY
¶ 1. Stanley Starks was terminated from his employment as a canine officer with the Fayette Police Department on July 17, 2001, for "conduct unbecoming an officer." While on the police force, Starks's immediate supervisor was Lee Nichols, the Fayette Police Department's chief of police. On May 22, 2001, Nichols, Starks, and two other officers were preparing to conduct a drug raid on an apartment occupied by Lenice Winston. Winston was employed as the dispatcher for the Alcorn State University police department.
¶ 2. Prior to the raid, Starks called Winston and informed her that the police were planning to raid her apartment. Winston telephoned her apartment and told her boyfriend that the police were on their way and that he should leave the premises immediately. No one was present at Winston's apartment at the time of the raid.
¶ 3. Winston informed her supervisor, Chief Bernadette Wilson, and a co-worker, Bud Williams, about Starks's call. Wilson and Williams called Chief Nichols and informed him that Starks had given Winston improper notice of the drug raid. Nichols questioned Winston about the information supplied by Wilson and Williams, and although she initially denied receiving information about the raid from Starks, Winston confessed that Starks had called her and informed her of the raid.
¶ 4. Starks has consistently denied these accusations.
¶ 5. As a result of this conduct, Nichols terminated Starks from employment with the police force, effective June 8, 2001. On July 17, 2001, Fayette Mayor Rogers King *1032 and the board of aldermen (the Board) upheld Starks's termination.
¶ 6. On January 3, 2003, Starks filed suit against the City of Fayette (the City), Mayor King, the Board, Lenice Winston and various John Does. On April 19, 2003, the City, King, and the Board filed a motion for summary judgment. Starks had originally alleged nine claims in his complaint, including claims for termination/suspension in violation of public policy (count II.); defamation (count V.); civil conspiracy (count VI.); and unpaid compensation (count VII.); however, in his response to the motion for summary judgment, Starks withdrew these claims, leaving claims of wrongful termination/suspension (count I.); breach of the duty of good faith and fair dealing (count III.); intentional infliction of emotional distress (count IV.); denial of property interest without due process of law (count VIII.); and a claim seeking injunctive relief (count IX.). The trial court granted the motion as to counts I., III., IV., VIII. and IX. It is from this ruling that Starks now appeals, arguing two points of error: (1) the trial court applied the holding of Bobbitt v. The Orchard, Ltd., 603 So.2d 356 (Miss.1992), too narrowly, therefore erroneously granting summary judgment as to counts I., III., VII. and IX; and (2) the trial court erred in granting summary judgment as to the intentional infliction of emotional distress claim IV.
¶ 7. Finding no error, we affirm.

STANDARD OF REVIEW
¶ 8. This Court conducts a de novo review of orders granting or denying summary judgment and looks at all the evidentiary matters before itadmissions in pleadings, answers to interrogatories, depositions, affidavits, etc. Lee v. Golden Triangle Planning & Dev. Dist., Inc., 797 So.2d 845, 847(¶ 5) (Miss.2001) (citing Aetna Cas. and Surety Co. v. Berry, 669 So.2d 56, 70 (Miss.1996)). The evidence must be viewed in the light most favorable to the party against whom the motion has been made. Id. If there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, summary judgment should be granted in the moving party's favor. Id. (citing Cothern v. Vickers, Inc., 759 So.2d 1241, 1245(¶ 5) (Miss.2000); Brown v. Credit Ctr., Inc., 444 So.2d 358, 362 (Miss.1983)).

APPLICABLE LAW
¶ 9. Mississippi has followed the employment-at-will doctrine since 1858. Coleman v. Mississippi Employment Sec. Comm'n, 662 So.2d 626, 628 (Miss.1995). This common-law doctrine provides that, in the absence of an employment contract or where the contract does not specify the term of the employment, either party may terminate the employment relationship at-will. Perry v. Sears, Roebuck & Co., 508 So.2d 1086, 1088 (Miss.1987).
¶ 10. An exception to this doctrine was created by our supreme court in Bobbitt v. Orchard, Ltd., 603 So.2d 356, 361 (Miss. 1992). In Bobbitt, the supreme court held that by promulgating an employees' handbook, an employer may create contractual obligations on its part that override the at-will doctrine. McCrory v. Wal Mart Stores, Inc., 755 So.2d 1141, 1143(¶ 8) (Miss.Ct.App.1999).
¶ 11. The City of Fayette has been a code charter city since November of 1909. Charter Book 2 p. 190. Because the City utilizes the default charter provided in the code in lieu of creating its own charter, we must consider the provisions of Mississippi Code Annotated Section 21-3-5 (Rev.2001) which provides, in pertinent part, as follows:
[T]he mayor and board of aldermen of all municipalities operating under this *1033 chapter shall have the power and authority to appoint a street commissioner, and such other officers and employees as may be necessary, and to prescribe the duties and fix the compensation of all such officers and employees. All officers and employees so appointed shall hold office at the pleasure of the governing authorities and may be discharged by such governing authorities at any time, either with or without cause.
We note that Starks has limited his appeal to the trial court's application of Bobbitt in finding that Starks was an at-will employee, and that he only addresses this section in his reply brief.

DISCUSSION OF ISSUES

I. DID THE LOWER COURT ERR BY INTERPRETING BOBBITT TOO NARROWLY?
¶ 12. Starks argues that under Bobbitt, in the absence of a disclaimer informing the employee that the at-will relationship has not been altered, an employer is obligated to abide by the express policies and procedures for disciplining employees as set forth in the City of Fayette's employee handbook. King, the Board and the City argue that Mississippi Code Annotated Section 21-3-5 controls; therefore, Starks was an employee at-will. King, the Board and the City further argue that Bobbitt does not apply; however, if it did apply it provides that an employer cannot terminate an employee for a particular offense if the employee handbook provides that the offense shall be punished by less severe discipline.
¶ 13. In ruling on the motion for summary judgment, the trial judge acknowledged that under Mississippi Code Annotated Section 21-3-5, Starks was an at-will employee; however, the trial judge proceeded to distinguish Bobbitt from Starks's claims, writing, "Unlike in Bobbitt, the infraction in this case is one in which termination was allowed for under the policies established in the employment manual. The Bobbitt court's holding was that the manual created an obligation on the part of the employer to follow its provisions in reprimanding, suspending or discharging an employee for infractions specifically covered therein."
¶ 14. We agree that Mississippi Code Annotated Section 21-3-5 controls. Furthermore even if the holding in Bobbitt served to alter the effect of Section 21-3-5, it is of no avail to Starks, for the manual promulgated by the City falls short of the regulations in Bobbitt which were later described as "a detailed hierarchical scheme of potential offenses an employee might commit together with a concrete discipline plan for dealing with such offenses." McCrory, 755 So.2d at 1143(¶ 9).

A. Mississippi Code Annotated Section 21-3-5
¶ 15. The case of Shelton v. Town of Hickory Flat, 724 So.2d 1075 (Miss.Ct. App.1998), is not directly on point because the Town of Hickory Flat did not have an employee manual; nevertheless, the case is helpful in our review of this issue. Shelton was hired to work in the Hickory Flat maintenance department, but was terminated some four years later. This Court ruled, that as an employee appointed by the mayor and the board of aldermen, under Mississippi Code Annotated Section 21-3-5, Shelton could be terminated at any time with or without cause. Id. at 1076(¶ 7).
¶ 16. The Fifth Circuit reviewed a similar issue in a suit brought by a former city police officer against his employer in McMillian v. City of Hazlehurst, 620 F.2d 484 (5th Cir.1980). The City had adopted a city ordinance containing sixteen rules regarding police conduct. The final rule *1034 provided that any member of the department found guilty of violating the rules and regulations would be "subject to reprimand, suspension or dismissal." Id. at 485. McMillian contended that the City's adoption of the rules limited the City's right to terminate employees for violations of the rules. The Fifth Circuit decided that the language of the rules did not to change the officer's employment at-will status under Mississippi Code Annotated Section 21-3-5, thus McMillian did not have a protected property right in his employment.
¶ 17. Our Attorney General cited McMillian in an opinion from that office questioning whether police officers are at-will employees or whether they have a protected property interest in their employment. The opinion concluded that "where a municipality adopts a formal personnel manual which addresses dismissal procedures, an employee may acquire a property right in his employment. Such a determination is left to a court of competent jurisdiction." Miss. AG. Op., Donald, (July 25, 1997).
¶ 18. Although the employee handbook issued by the City of Fayette is more complex than the sixteen rules enumerated in McMillian, we find that Mississippi Code Annotated Section 21-3-5 applies. Nothing in the manual indicates that it was designed to adjust the at-will status of employees such as Starks. Additionally, even if the manual could be interpreted as a city ordinance attempting to alter the status of city employees, when there is a conflict between a municipal ordinance and a state statute, the statute must prevail. Jordan v. Smith, 669 So.2d 752, 758 (Miss. 1996) (citing Hattiesburg Firefighters Local 184 v. City of Hattiesburg, 263 So.2d 767, 769 (Miss.1972)). Thus, the City lacks the authority to alter the at-will employment design established in Section 21-3-5.

B. The Application of Bobbitt

¶ 19. Assuming that the City could undertake to alter the at-will relationship, we next consider Bobbitt and its implications on the case sub judice.
¶ 20. The Bobbitt court specifically held as follows:
[W]hen an employer publishes and disseminates to its employees a manual setting forth the proceedings which will be followed in event of an employee's infraction of rules, and there is nothing in the employment contract to the contrary, then the employer will be required to follow its own manual in disciplining or discharging employees for infractions or misconduct specifically covered by the manual.
Bobbitt, 603 So.2d at 357.
¶ 21. In Bobbitt, the employee was fired for "insubordination" after an exchange with The Orchard's executive director over a minor problem in serving lunch. Id. at 358. The Orchard's employee manual delineated ten minor offenses and the corresponding punishments; sixteen major offenses and the corresponding discipline; and ten "intolerable" offenses which would result in immediate temporary suspension until the offense could be reviewed by the appropriate authorities.
¶ 22. The handbook further provided that "[d]ismissal without notice or severance pay is the penalty for an Intolerable Offense." Id. at 360. Insubordination was listed as a major offense. Commission of the first major offense required counseling and a formal written warning to be signed by the employee and the department head. It was not until a violation of a third major offense that the employee could be terminated. The court opined:
We hold in this case that because the manual was given to all employees, it became a part of the contract. It did not give the employees "tenure," or create *1035 a right to employment for any definite length of time, but it did create an obligation on the part of The Orchard to follow its provisions in reprimanding, suspending or discharging an employee for infractions specifically covered therein.
Id. at 361.
¶ 23. The rigorous disciplinary plan in Bobbitt contrasts with the provisions in the City's employee manual in the case sub judice. Section IX.B.1. of the manual provides the following definition of discipline: "For purposes of this procedure, discipline refers to written warning or written reprimand, suspension without pay, demotion, or dismissal depending on the seriousness of the problem and incidence of prior violations."
¶ 24. Minor infractions are discussed in section IX.B.2. of the manual.
Minor infractions are the type of behavior that does not generally require severe disciplinary action but if continued may lead to suspension or termination. For example:
a. Wasting time, loitering or being away from assigned working place for long periods of time without good reason.
b. Absence from work for one (1) day without permission, notification or adequate explanation.
c. Repeated tardiness
¶ 25. The manual discusses major infractions in IX.B.3.
Major infractions are the types of behavior that may result in severe disciplinary action such as suspension or termination, expecially [sic] if repeated.
a. Unreasonable refusal to carry out a specific order or instruction issued by supervisor or department head.
b. Thievery from fellow workers, the city, or other [sic] on City property.
c. Violation of posted city regulations concerning any city policy.
d. Omission of pertinent facts or falsifying personnel or other records during or after time of employment.
e. Habitual tardiness or absenteeism after a first warning and failure to give notice
f. Failure to comply with the city's current policies and procedures.
g. Use of intoxicating beverages or drugs of any kind while on duty or reporting to work while intoxicated.
In section IX.B.4. the manual outlines what steps "should" be taken in the event a department head believes that the actions of an employee under his supervision justify disciplinary action. Section IX.B.5. outlines the warnings and penalties that "may" result from the commission of major and minor infractions, although "in any particular case the penalty may be greater[.]" Section IX.B.7. outlines the City's termination procedure.
¶ 26. We agree with the trial court that Bobbitt does not extend to the case sub judice. Unlike the manual in Bobbitt, the City's manual provides examples of infractions, along with punishments that "may" result from such infractions. We find that the manual did not change Starks's status as an at-will employee.
¶ 27. This decision comports with a similar case addressed by our federal court in Relliford v. Holly Springs, Mississippi, No. 1:93CV113-B-A, 1995 WL 1945432. (N.D.Miss.1995). Relliford was employed by the City of Holly Springs as a police officer. Amidst accusations of impropriety, Relliford's employment was terminated. Relliford filed suit against the City and other defendants. Citing Bobbitt, Relliford argued that by promulgating a manual which contained certain disciplinary and termination procedures, the City *1036 had adopted a policy of terminating its employees only for cause. Finding that the manual was not an exclusive listing of disciplinary rules, the court opined "that the manual in the instant cause does not confer a legitimate claim of entitlement in continued employment." Id.
¶ 28. The City of Fayette's manual did not adjust Starks's status as an at-will employee under Mississippi Code Annotated Section 21-3-5, and we decline to extend our supreme court's ruling in Bobbitt to encompass such an interpretation. This issue is without merit.

II. WAS SUMMARY JUDGMENT PROPER REGARDING STARKS's CLAIMS FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS?
¶ 29. To prevail in a claim for intentional infliction of emotional distress, the alleged conduct must be so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency. Diamondhead Country Club and Property Owners Ass'n., Inc. v. Montjoy, 820 So.2d 676, 684(¶ 21) (Miss.Ct.App. 2000). A claim for intentional infliction of emotional distress will not ordinarily lie for mere employment disputes. Lee, 797 So.2d at 850(¶ 24) (citing Pegues v. Emerson Elec. Co., 913 F.Supp. 976, 982 (N.D.Miss.1996)).
¶ 30. The Mississippi Supreme Court discussed a similar claim of intentional infliction of emotional distress in Lee. In Lee, Lee was hired by the Golden Triangle PDD as a program specialist in its child care program. At the time she was hired, Lee received an employee handbook which contained a disclaimer that effectively negated any possibility that Lee was not an at-will employee. Lee was promoted to Child Care Program Director, but because of poor performance evaluations, Lee was later demoted to the position of Childcare Specialist. Lee declined the new position, and the Golden Triangle PDD terminated her employment. Lee filed suit against Golden Triangle alleging breach of an employment contract and intentional infliction of emotional distress. The case was dismissed on summary judgment, and the supreme court affirmed. Lee, 797 So.2d at 852(¶ 26).
¶ 31. Reviewing Lee's intentional infliction of emotional distress claim, the supreme court affirmed, writing, "[r]ecognition of a cause of action for intentional infliction of emotional distress in a workplace environment has usually been limited to cases involving a pattern of deliberate, repeated harassment over a period of time." Id. at 850(¶ 24) (citing Pegues, 913 F.Supp. at 982). The court opined "[s]ince no contract existed between the parties and Golden Triangle's conduct fell well short of retaliatory discharge, no claim for the intentional infliction of emotional distress can lie." Id.
¶ 32. The case sub judice is analogous to Lee. The employment manual given to Starks did not create a contract altering his status as an at-will employee, and Starks has not shown that his termination was "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency." Diamondhead, 820 So.2d at 684(¶ 21).
¶ 33. Summary judgment on this issue was proper.
¶ 34. THE JUDGMENT OF THE CIRCUIT COURT OF JEFFERSON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES, P.J., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.