# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-02109-COA

**CINDY PETTY**                                                              **APPELLANT**

**v.**

**BAPTIST MEMORIAL HEALTH CARE**                          **APPELLEES**
**CORPORATION, BAPTIST MEMORIAL**
**HOSPITAL-GOLDEN TRIANGLE, INC., MARY**
**ELLEN SUMRALL, INDIVIDUALLY, VANESSA**
**LAFAYETTE, INDIVIDUALLY, ALICIA**
**GRANT, INDIVIDUALLY, PAUL CADE,**
**INDIVIDUALLY, AND ALEXANDRIA BANKER,**
**INDIVIDUALLY**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/05/2013 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | P. NELSON SMITH JR. |
| ATTORNEYS FOR APPELLEES: | PAUL E. PRATHER |
| | MATTHEW GARY GALLAGHER |
| NATURE OF THE CASE: | CIVIL - TORTS - OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE |
| TRIAL COURT DISPOSITION: | GRANTED SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS/APPELLEES |
| DISPOSITION: | AFFIRMED IN PART AND REVERSED AND REMANDED IN PART – 03/10/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., ROBERTS AND MAXWELL, JJ.**

**IRVING, P.J., FOR THE COURT**:

¶1.     After she was terminated from her employment as a registered nurse at Baptist

Memorial Hospital–Golden Triangle Inc. (BMH-GT), Cindy Petty filed a complaint, in the

Circuit Court of Lowndes County, against BMH-GT; Baptist Memorial Healthcare

Corporation (Baptist), BMH-GT's parent corporation; Mary Sumrall, BMH-GT's director of nursing; Vanessa Lafayette, director of BMH-GT's maternal-child department; Alicia Grant, BMH-GT's assistant director of nursing; Paul Cade, BMH-GT's administrator; and Alexandria Banker, BMH-GT's head nurse for the labor-and- elivery department. BMH-GT and Baptist will be referred to collectively as BMH-GT, unless the context requires otherwise, and all of the individuals will be referred to collectively as the individual defendants, unless the context requires specific name identification. BMH-GT and the individual defendants filed motions for summary judgment,[1] which the circuit court granted. Cindy appeals.

¶2.     For the reasons discussed later in this opinion, we affirm in part and reverse in part.

FACTS

¶3.     Cindy was employed for sixteen years by BMH-GT as a registered nurse in BMH-GT's labor-and-delivery department. She was an at-will employee. On February 24, 2010, Cindy successfully performed an internal bimanual uterine massage on a patient who was experiencing severe hemorrhaging. Dr. James Holzhauer, a medical doctor employed by BMH-GT, was the patient's treating physician.

¶4.     By letter dated February 27, 2010, BMH-GT terminated Cindy's employment. The letter stated that the basis for Cindy's termination was that "there was no physician's order [instructing Cindy] to perform [the] procedure [and the] procedure [was] not within

---

[1] Three separate motions for summary judgment were filed. The individual defendants filed a joint motion; Baptist filed an individual motion; and BMH-GT also filed an individual motion.

[Cindy's] scope of practice." BMH-GT reported to the Mississippi Board of Nursing (Board) that Cindy had performed the procedure.[2] Following a hearing, the Board concluded that "it is within the scope of [an] appropriately trained registered nurse to perform [an] internal bimanual uterine massage per an institutional policy addressing the emergency management of postpartum hemorrhag[ing]."[3] The Board took no disciplinary action against Cindy.

¶5.    In her complaint, Cindy alleged: (1) intentional infliction of emotional distress, (2) negligent infliction of emotional distress, (3) tortious interference, and (4) defamation. More specifically, Cindy alleged, among other things, that BMH-GT had made false statements about her to the Board. In their answers, the defendants, with the exception of Baptist, admitted that BMH-GT had "made a report to the Mississippi Board of Nursing with regard to the procedure performed by [Cindy]." The record does not disclose the identity of the person who made the report on BMH-GT's behalf. In their motions for summary judgment, BMH-GT and the individual defendants collectively argued: (1) Cindy could not prevail on her claim of intentional infliction of emotional distress because she could not establish that their conduct was extreme or outrageous; (2) Cindy's claim of negligent infliction of emotional distress was barred by the exclusivity-of-remedy provision of the Mississippi Workers' Compensation Act (the Act),[4] or, alternatively, Cindy could not establish that

---

[2] The report alleged that Cindy had performed the procedure that, according to BMH-GT, was outside of her scope of practice as a registered nurse.

[3] The record reveals that no representative of BMH-GT attended the hearing.

[4] Miss. Code Ann. § 71-3-9 (Rev. 2011).

3

BMH-GT or the individual defendants were negligent; (3) Cindy could not prevail on her defamation claim because she could not establish that BMH-GT or the individual defendants made false statements about her, and because any statements made by the defendants about her were protected by a qualified privilege; and (4) Cindy could not prevail on her tortious-interference claim because Mississippi does not recognize a cause of action for tortious interference with one's profession or career. In its motion for summary judgment, BMH-GT also argued that it could not be held liable for tortiously interfering with the employment of one of its own employees. Additionally, in their summary-judgment motion, the individual defendants argued that Cindy could not prevail on her tortious-interference claim against them because their actions were within the scope of the duty they owed to BMH-GT, and were performed during the course of Cindy's employment with BMH-GT.

¶6.     In support of the summary-judgment motions, BMH-GT and the individual defendants submitted excerpts from the transcript of Cindy's deposition, where the following colloquy took place:

> [ATTORNEY]:     Now, tell me about your relationship with Mr. Cade.
>
> [CINDY]:     I don't have one.
>
> [ATTORNEY]:     I mean, you know who he is?
>
> [CINDY]:     Yes.
>
> ****
>
> [ATTORNEY]:     Well, is there something that he specifically has done to you that you're aware of?
>
> [CINDY]:     Other than he was the last resort on the problem solving, that he had a chance to rectify this mistake.

4

[ATTORNEY]: Okay. Anything else that Mr. Cade did in connection with this case that you're aware of?

[CINDY]: No, sir[.] [N]ot to my knowledge.

[ATTORNEY]: Okay. Let's talk about Ms. Somerall [sic], who's also a defendant in this lawsuit. Tell me about your relationship with Ms. Somerall [sic].

[CINDY]: Same concept. Worked for her for a year.

[ATTORNEY]: Okay. Any particular problems with her?

[CINDY]: No, sir.

****

[ATTORNEY]: All right. Well, what is it that -- what was Ms. Grant's role in this -- that you think she did wrong?

[CINDY]: The same concept. I don't think they -- when they fired me, that they were taking into account that what I was presenting to them -- that I did not do anything wrong.

****

[ATTORNEY]: Okay. And Ms. Lafayette . . . what is it that you think she did wrong?

****

[CINDY]: I think she made the wrong decision.

[ATTORNEY]: Okay. Now, did you have any personal animosity or difficulty with Mr. Cade?

[CINDY]: No.

[ATTORNEY]: How about with Ms. Somerall [sic]?

[CINDY]: No.

5

[ATTORNEY]:  How about with Ms. Grant?

[CINDY]:  I think there was a little bit of something between Ms. Lafayette and Ms. Grant and I.

[ATTORNEY]:  Why?

[CINDY]:  I don't know.  I just feel like maybe they were picking on me a lot.  I don't know why.

****

[ATTORNEY]:  Okay.  And it's just your feeling, but was there anything that they said specifically to you that made you feel that they were being un- -- somehow unfair to you?

[CINDY]:  I can't recall exactly.  I just -- I felt the vibes.

****

[ATTORNEY]:  Okay.  And did you have any particular difficulty with [Ms. Banker]?

[CINDY]:  No, not really . . . .

****

[ATTORNEY]:  Okay.  Are you alleging that Mr. Cade said something untrue about you?

[CINDY]:  Not that Mr. Cade personally said anything untrue.  It was the process.

****

[ATTORNEY]:  Okay.  How about with regard to Ms. Somerall [sic].  Do you know of anything she said that was untrue about you?

[CINDY]:  I -- don't know of anything that she said.

[ATTORNEY]:  How about Ms. Grant? . . .

6

[CINDY]:               I don't know anything --

[ATTORNEY]:          Okay.

[CINDY]:               -- that she said.

[ATTORNEY]:          How about Ms. Lafayette? . . .

[CINDY]:               Like I said, I don't know what they -- I don't know what
                       anybody said.

[ATTORNEY]:          Okay. . . .  And that would include Ms. Grant and Ms.
                       Banker[,] right?

[CINDY]:               Yes.

The defendants argued that Cindy's statements made during her deposition established that they had not subjected her to harassment or made false statements about her.

¶7.     Also during Cindy's deposition, after being questioned regarding her professional conduct, Cindy admitted that she had received two write-ups during her employment with BMH-GT.  The first write-up was a result of Cindy exposing a part of her buttock and inviting a doctor at BMH-GT to "kiss [her] butt."  The second write-up arose from an allegation that Cindy had broken a patient's membrane during labor.  BMH-GT placed Cindy on leave while it investigated the second incident.  Following the investigation, and after finding no basis for the allegation, BMH-GT reinstated Cindy's employment and compensated her for the time that she was off.  The record does not establish that BMH-GT reported Cindy to the Board based on the second incident.

¶8.     In her response to the motions for summary judgment, Cindy argued that it was clear that BMH-GT and the individual defendants had acted with malice and with an intent to harm her by terminating her employment based on her performance of a procedure that

7

several other BMH-GT nurses had performed without reprimand or termination. Cindy also argued that BMH-GT and the individual defendants had intentionally and maliciously reported her to the Board in an effort to have her nursing license revoked. Cindy insisted that the defendants' actions were extreme and outrageous.

¶9. In support of her arguments, Cindy submitted excerpts from the transcripts of the depositions of several individuals, including Dr. Holzhauer; Dr. Gregory Childrey, another medical doctor employed by BMH-GT; and Mary Loving, Cindy Harrison, and Marty Dollar, labor-and-delivery nurses employed by BMH-GT.

¶10. The following colloquy took place between Dr. Holzhauer and Cindy's attorney during Dr. Holzhauer's deposition:

> [ATTORNEY]: In February of 2010, what would have been required of [labor-and-delivery nurses] in a postpartum hemorrhage situation?
>
> [HOLZHAUER]: Stop the bleeding.
>
> [ATTORNEY]: And how would they do that?
>
> [HOLZHAUER]: The best way to stop bleeding is bi-manual.
>
> ****
>
> [ATTORNEY]: All right. And have you specifically trained nurses at Baptist to perform this procedure?
>
> [HOLZHAUER]: I have.
>
> [ATTORNEY]: Can you give us some names of some nurses that you've trained?
>
> [HOLZHAUER]: The old crew.
>
> [ATTORNEY]: All right.

8

[HOLZHAUER]:    Okay. The ones that have been there a long time all know how to do this.

[ATTORNEY]:    All right. Such as Cindy Petty?

[HOLZHAUER]:    Such as Cindy Petty.

¶11. During his deposition, Dr. Childrey also stated that he had trained Cindy to perform the procedure and that he had issued a written order, which instructed nurses to perform the procedure when needed. According to Dr. Childrey, "[n]o further order, either written or verbal, [was] necessary for a labor and delivery nurse to perform [the] procedure on any of [his] patients." Dr. Childrey indicated that he believed that Cindy had been competent to perform the procedure.

¶12. During her deposition, Mary stated that she had heard rumors about the incident leading to Cindy's termination. Mary also stated that she had spoken with other nurses at BMH-GT, who indicated that they would have performed the procedure on the post-operative patient, just as Cindy had. During her deposition, Harrison stated that she had performed the procedure "[a] couple of times," and that she was unaware of any nurse other than Cindy who had been reprimanded, suspended, or terminated based on the nurse's performance of the procedure. Marty made identical statements during her deposition.

¶13. Cindy also submitted excerpts from the transcripts of the depositions of other labor-and-delivery nurses employed by BMH-GT, in which those nurses stated: (1) they personally had performed the procedure or knew of someone who had performed the procedure; and (2) they were unaware of any nurse other than Cindy who had been terminated for performing the procedure.

¶14. By order filed December 5, 2013, the circuit court found that summary judgment was proper as to Cindy's claim of intentional infliction of emotional distress because Cindy could not cite to any action by BMH-GT or the individual defendants that constituted deliberate and continuous harassment, or that could be considered extreme and outrageous conduct. The circuit court found that Cindy's claim of negligent infliction of emotional distress was barred by section 71-3-9. The circuit court also found that Cindy could not prevail on her tortious-interference claim because Cindy had provided no evidence to support her allegation that the report made to the Board had caused her to lose any employment opportunities. Additionally, the circuit court found that summary judgment was proper as to Cindy's defamation claim because Cindy had not provided any evidence of false statements made by BMH-GT or the individual defendants. The circuit court also found that any statements made by BMH-GT were protected by a qualified privilege.

¶15. On appeal, Cindy argues that the circuit court erred by granting summary judgment as to her claim of intentional infliction of emotional distress because there remain genuine issues of material fact, and a reasonable jury could find that the defendants' actions were outrageous, willful, malicious, and intentional. Cindy further argues that the circuit court erred by finding that the negligent-infliction-of-emotional-distress claim was barred by section 71-3-9 because the defendants' actions were intentional. Cindy failed to raise any arguments challenging the circuit court's grant of summary judgment as to her claims of tortious interference and defamation.

¶16. In response, BMH-GT and the individual defendants reiterate the arguments made in their motions for summary judgment, while insisting that summary judgment was proper in

10

this case. Additionally, the defendants insist that because Cindy failed to raise any arguments regarding the circuit court's grant of summary judgment on her claims of tortious interference and defamation, Cindy has waived those claims on appeal. Alternatively, the defendants argue that the circuit court did not err by granting summary judgment as to those claims. The defendants also argue that Cindy has provided no evidence to establish that their actions have precluded any employment opportunities that she may have had.

DISCUSSION

¶17. We agree that Cindy has waived any assignments of error arising from the circuit court's grant of summary judgment on her claims of tortious interference and defamation. "Where an assignment of error is not discussed in the briefs, it is considered abandoned and waived on appeal." *Clay v. Clay*, 837 So. 2d 215, 220 (¶27) (Miss. Ct. App. 2003) (citing *Sumrall v. State*, 758 So. 2d 1091, 1094 (¶6) (Miss. Ct. App. 2000)). Therefore, we affirm the circuit court's grant of summary judgment as to those claims, and we only discuss Cindy's assignments of error arising from the circuit court's grant of summary judgment as to her remaining claims.

¶18. The standard of review for summary judgments is well established:

> [An appellate court] conducts de novo review of orders granting or denying summary judgment and looks at all the evidentiary matters before it[.] . . . The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If there is no genuine issue of material fact and the moving party is entitled to [a] judgment as a matter of law, summary judgment should be granted in the moving party's favor. The burden of demonstrating that no genuine issue of material fact exists is on the moving party. If there is doubt as to whether or not a fact issue exists, it should be resolved in favor of the non-moving party. That is, it is better to err on the side of denying a motion for summary judgment if a doubt exists as to whether a genuine issue of fact exists.

*Lee v. Golden Triangle Planning & Dev. Dist. Inc.*, 797 So. 2d 845, 847-48 (¶¶5-6) (Miss. 2001) (internal citations omitted).

### I. Intentional Infliction of Emotional Distress

¶19. As stated, Cindy insists that the facts of this case clearly demonstrate that BMH-GT acted with malice when it terminated her employment without a legitimate basis for doing so. Although Cindy admits that she was an at-will employee with BMH-GT, she insists that the lack of a legitimate basis for her termination proves that BMH-GT's actions were intentional, willful, wanton, and malicious. Cindy further insists that malice can be inferred from the fact that BMH-GT reported her to the Board, thereby, according to Cindy, intentionally placing her nursing license at stake.

¶20. "A claim for intentional infliction of emotional distress requires conduct that is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Jones v. Mullen*, 100 So. 3d 490, 498-99 (¶40) (Miss. Ct. App. 2012) (quoting *Langston v. Bigelow*, 820 So. 2d 752, 757 (¶11) (Miss. Ct. App. 2002)). "If there is outrageous conduct, no injury is required for the recovery of infliction of emotional distress or mental anguish." *Wilson v. Gen. Motors Acceptance Corp.*, 883 So. 2d 56, 65 (¶35) (Miss. 2004) (citation omitted). "[T]he nature of the act itself, rather than the seriousness of the consequences, can justify an award for compensatory damages." *Id.* (citation omitted).

¶21. "Mississippi is an employment at-will state. The general rule of employment at[-]will is that a contract for employment for an indefinite period may be terminated at the will of either party, whether the termination is for any reason or no reason at all." *Buchanan v.*

12

*Ameristar Casino Vicksburg Inc.*, 852 So. 2d 25, 26 (¶4) (Miss. 2003) (citation omitted).

¶22.    In *Lee*, a case cited by the defendants, the appellant, an at-will employee, was terminated after she received negative feedback on her performance evaluations and after she refused to accept a resultant demotion. *Lee*, 797 So. 2d at 847 (¶¶3-4). Following her termination, the appellant filed a grievance complaint with her former employer, and she hired an attorney to represent her during the grievance process. *Id.* at (¶4). After the grievance committee upheld the termination, the appellant sued the former employer, alleging, in part, intentional infliction of emotional distress based on retaliatory discharge. *Id*. The appellant argued that she was fired because she initiated the grievance process and because she hired an attorney to represent her. *Id*. at 851 (¶21). The trial court granted summary judgment in favor of the employer, and an appeal ensued. *Id*. at 847 (¶1). On appeal, as to the emotional-distress claim, our supreme court found:

> A claim for intentional infliction of emotional distress will not ordinarily lie for mere employment disputes. Recognition of a cause of action for intentional infliction of emotional distress in a workplace environment has usually been limited to cases involving a pattern of deliberate, repeated harassment over a period of time. It is the nature of the act itself[—]not the seriousness of its consequences[—]that gives impetus to legal redress.

*Id.* at 851-52 (¶24) (internal citations and quotation marks omitted).

¶23.    Our supreme court also upheld the trial court's grant of summary judgment, finding that the appellant could not prevail on the emotional-distress claim because she was an at-will employee and because she could not establish that her termination was retaliatory. *Id*. at (¶¶21-25). In other words, *Lee* holds that an at-will employee who is terminated by her employer cannot sustain any action against the employer for retaliatory discharge no matter

13

the emotional distress that she may have suffered as a result of the discharge.

¶24. As indicated, because Cindy was an at-will employee, BMH-GT was free to terminate her at any time. Therefore, based on *Lee*, we find that there is no merit to Cindy's argument that BMH-GT can be held liable to her for the emotional distress that she suffered as a result of BMH-GT's termination of her. However, as discussed in the remaining portion of this opinion, BMH-GT's action in reporting Cindy to the Board takes this case outside of the parameters of *Lee*, thereby making *Lee* distinguishable.

¶25. First, BMH-GT's action in reporting Cindy to the Board followed its termination of her. Thus, the employee-employer relationship had ended. Second, BMH-GT has presented no evidence that it had an affirmative duty to report Cindy to the Board. Third, there is no evidence that making such a report was a routine part of BMH-GT's employment practices upon terminating an employee for cause. Moreover, the record reveals that other nurses, against whom BMH-GT took no disciplinary action, had performed the very procedure that was the basis of the report made against Cindy to the Board. Further, the record establishes that Dr. Holzhauer, the patient's treating physician, had trained Cindy to perform the procedure and had expected her to perform the procedure on his patients. Additionally, as stated, the Board did not find that Cindy's action in performing the procedure fell outside of her scope of practice. And as stated, no disciplinary action was warranted. Therefore, Cindy has at least created a genuine issue of fact as to whether BMH-GT's unprecedented, nonobligatory act of reporting her to the Board, after the employment relationship was terminated and without a clear basis for doing so, constituted intentional infliction of emotional distress. Therefore, we find that the circuit court erred by granting summary

14

judgment on this claim.

## II. Negligent Infliction of Emotional Distress

¶26. Section 71-3-9 provides:

> The liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next-of-kin, and anyone otherwise entitled to recover damages at common law or otherwise from such employer on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under this chapter, or to maintain an action at law for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, nor that the employee assumed the risk of his employment, nor that the injury was due to the contributory negligence of the employee.

¶27. In *Bowden v. Young*, 120 So. 3d 971, 975 (¶10) (Miss. 2013), after the employment relationship ended, former employees filed a complaint against their former employer, asserting claims of battery, intentional infliction of emotional distress, aiding and abetting the maintenance of a public and private nuisance, and conspiracy. The employer moved for a dismissal, arguing that the employees' claims were barred by the Act. *Id*. The trial court denied the motions, and the employer appealed. *Id*. Upon review, the Mississippi Supreme Court found that, "[e]ssentially, if the facts alleged or proven point to negligence, gross negligence, or recklessness, *despite an allegation of actual intent*, [an appellate court] will find that workers' compensation is the sole avenue for relief for the aggrieved party." *Id*. at 977 (¶15) (emphasis added). Our supreme court further found that "absent the employer's *deliberate intent and design to injure* the employee, the law in Mississippi . . . does not allow an injured employee to escape the exclusive-remedy provisions of the Act." *Id*. at (¶18)

15

(emphasis added).  Because Cindy was an at-will employee claiming that BMH-GT is liable to her for negligent infliction of emotional distress arising from BMH-GT's termination of her, *Lee* and *Bowden* make it clear that she cannot maintain an action against her former employer for negligent infliction of emotional distress.  This issue is, therefore, without merit.

¶28.   Accordingly, we affirm in part and reverse and remand in part.

¶29.   **THE JUDGMENT OF THE LOWNDES COUNTY CIRCUIT COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANT AND ONE-HALF TO THE APPELLEES.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR.  JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.**